J-A02018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TARANI JOHNSON AND JOYCELYN JOHNSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| BREWERY CONDOMINIUM ASSOCIATION C/O CAMCO | |
| Appellee | No. 425 EDA 2014 |

Appeal from the Order Entered on January 10, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No.: 130801012

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED MAY 13, 2015**

Tarani Johnson and Joycelyn Johnson (collectively, "the Johnsons") appeal the trial court's January 10, 2014 order[1] that sustained the preliminary objections of the Brewery Condominium Association ("the Association") to the Johnsons' complaint seeking to quiet title in their favor to a condominium that the Association bought at a sheriff's sale.  The trial court agreed with the Association that the Johnsons' suit impermissibly sought to collaterally attack the earlier sheriff's sale.  The Johnsons contend

---

[1]    The order is dated January 6, 2014.  However, the docket reflects that notice of the order was transmitted to the parties pursuant to Pa.R.C.P. 236 on January 10, 2014, rendering that the operative date for purpose of appeal.

that this suit seeks relief that is distinct from, and therefore not precluded by, the prior proceedings. We disagree. Consequently, we affirm.

The trial court has provided the following lengthy factual and procedural history of this case:

> The legal action that led to the sheriff's sale of [a condominium located at 870 North 28th Street, Unit 116, Philadelphia, Pennsylvania ("the Property"),] involved [the Association] filing a Confession of Judgment on October 31, 2011[,] against State Trustee Services LLC as [t]rustee of 28th Street Silver Apple Land Trust [the "Trust,"] the record owner of the Property at the time. The Trust was formed by Appellant Tarani Johnson, who was the trustee and sole beneficiary of the Trust. The Confession of Judgment action in the amount of $48,267.16[,] was filed because [the Johnsons] had failed to pay condominium assessments for years. [The Association] executed on the Confession of Judgment and proceeded to the aforementioned sheriff's sale on June 4, 2013. It was only **after** the sheriff's sale took place that [the Johnsons] attempted to contest the Confession of Judgment.
>
> On June 4, 2013, [the Johnsons] each filed Motions to Intervene in the Confession of Judgment Action. On June 24, 2013, each of the [Johnsons] also filed Motions to Set Aside Sheriff's Sale and Petitions to Open/Strike Confession of Judgment. These motions were all predicated on the assertion that the Property was never properly conveyed to the Trust, and as a result, [the Johnsons] continue to own the Property. This is the same argument presented in the instant action. On June 25, 2013, the **Trust** also filed a Motion to Set Aside Sheriff's Sale. Thus, [the Johnsons] have, in their various motions, simultaneously asserted that the Trust never owned the Property while continuing to file motions in the name of the Trust, which, in and of itself, renders the instant [a]ppeal disingenuous. [The trial court] denied the Motions to Intervene by Orders dated August 2, 2013. The rest of the Motions were denied by [the trial court] via Orders dated and docketed [on] August 13, 2013. **[The Johnsons] failed to file any motions for reconsideration or appeals of these Orders**.

On August 12, 2013, [the Johnsons] initiated the instant action to Quiet Title, asserting that they still owned the Property. On September 14, 2013[, the Johnsons] filed a *lis pendens* against the [P]roperty. [The Association] filed Preliminary Objections to the Quiet Title Complaint on September 16, 2013. Before those Preliminary Objections could be ruled upon, on October 5, 2013, [the Johnsons] filed an Amended Complaint, rendering [the Association's] first set of Preliminary Objections moot. On October 25, 2013, [the Association] then filed a new set of Preliminary Objections pertaining to the Amended Complaint. In these Preliminary Objections, [the Association] asserted, *inter alia*, that the instant action was an impermissible collateral attack on a valid sheriff's sale.

[The Johnsons] filed a Response to the Preliminary Objections on November 17, 2013, asserting that [the Association] engaged in "fraudulent conduct"; that the sheriff's sale was fraudulent and ineffective because the sale price differed from the price [that the Association] actually paid for the Property; and that the deed conveying the property to [the Association] was defective because it was voided and reissued without court approval.[2] [The Johnsons] fail, however, to provide any evidence of any fraud besides an unsubstantiated and unverified assertion that their counsel is in possession of an affidavit from an unnamed Sheriff's Department Deputy Sheriff, one who is allegedly involved in an internal affairs unit investigation that would allegedly demonstrate that some form of fraud had occurred in this matter. This alleged document has not been provided to [the trial court], but instead [the Johnsons] requested that the document be viewed *in camera*. However, this "request" was merely made as part of Exhibit B (to the Response to Preliminary Objections[)], and no such formal request was ever made to this Court. Exhibit B is comprised entirely of the following language on a sheet of paper with no identifying letterhead: "The affidavit of the Sheriff's Department Deputy Sheriff involved in the internal affairs unit investigation of this matter is in the possession of [the Johnsons'] counsel. Due to the fact that this is an active, on-going investigation involving fraud and theft charges that may involve other parties not yet identified, [the Johnsons'] counsel respectfully requests that this affidavit be reviewed by the court *in camera* and placed under seal—FOR JUDGE'S EYES ONLY." Without any evidence, [the trial court] cannot ascertain that any fraud has occurred.

- 3 -

[2] [The Johnsons] assert that "no sale had been completed as [the Association] had not paid the full price for the Property and had only made a deposit on the Property[,] despite the fact that the Deed issued by the Sheriff's Office stated that [the Association] had paid the full price." Response to Preliminary Objections at ¶ 14. [The Johnsons] also argue that "[the Association] is asserting ownership based upon a fraudulent [s]heriff's [s]ale and a defective Deed that was voided once and reissued without court approval." *Id.* at ¶ 39. There is no evidence in the record of a price discrepancy or any sort of defective deed. The sheriff's deed was delivered on June 24, 2013, and the recording of said deed on September 17, 2013[,] shows no corrections. *See* Amended Complaint, Exh. D. These arguments were also made in the Amended Complaint, but accusations that [the Association] engaged in fraudulent conduct or that the sheriff's sale was fraudulent were not raised until the Response to the Preliminary Objections.

[The trial court] sustained the Preliminary Objections via an order dated January 6, 2014[, and filed on January 10, 2014], striking the *lis pendens* and dismissing the instant action. In response, [the Johnsons] filed a Notice of Appeal with the Superior Court on February 3, 2014[.] [V]ia an order docketed on February 5, 2014, and pursuant to Pa.R.A.P. 1925(b), [the trial] court ordered [the Johnsons] to file a Concise Statement of [Errors] Complained of on Appeal . . . . [The Johnsons] did so, filing their [concise statement] on February 20, 2014.

Trial Court Opinion ("T.C.O."), 4/15/2014, at 1-4 (citations omitted or modified; emphasis in original; some footnotes omitted). The trial court then furnished the above-excerpted opinion pursuant to Pa.R.A.P. 1925(a), ripening the case for our consideration.

As they did in their Rule 1925(b) statement, the Johnsons assert seven issues for review, several of which are redundant, just as are the corresponding arguments. For reasons of economy, the second issue reproduced below incorporates four issues that separately raise identical or

closely related arguments. Issues one, three, and four, as set forth below, corresponding respectively to the Johnsons' first, sixth, and seventh issues as stated, are reproduced verbatim.

>1. Whether the trial court erred as a matter of law when it sustained [the Association's] preliminary objections, dismissed [the Johnsons'] amended complaint[,] and struck the *lis pendens*, based upon the theories of *res judicata* and collateral estoppel[], as advanced by [the Association], since such a determination required the court to look at facts outside of the "four corners" of [the Johnsons'] amended complaint?
>
>2. Whether the trial court erred as a matter of law when it sustained [the Association's] preliminary objections since the determination by the court was based upon facts not of record in the instant case, failed to draw all reasonable inferences from the facts set forth in the amended complaint in favor of [the Johnsons], and refused to review or consider the facts and supporting evidence presented by [the Johnsons in their answer to [the Association's] preliminary objections?
>
>3. Whether the trial court abused its discretion when it failed to either review *in camera*, or even entertain [the Johnsons'] request for an *in camera* review of, the affidavit of Deputy Sheriff Parsons that was referenced to [*sic*] by [the Johnsons] in support of their answer to [the Association's] preliminary objections?
>
>4. Whether the trial court demonstrated bias toward[] [the Johnsons] in sustaining [the Association's] preliminary objections where the trial judge who decided the instant preliminary objections was the same judge who presided over the motions filed by [the Johnsons] in the prior case and allowed her opinions formulated against [the Johnsons] in the prior case to affect her decision in the instant case?

Brief for the Johnsons at 11-12.

Our well-settled standard of review of an order sustaining or denying preliminary objections is as follows:

> "Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." ***De Lage Landen Fin'l Servs., Inc., v. Urban P'ship, LLC***, 903 A.2d 586, 589 (Pa. Super. 2006).

> > "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

> ***Hykes v. Hughes***, 835 A.2d 382, 383 (Pa. Super. 2003) (citations omitted).

***Haun v. Comm. Health Sys., Inc.***, 14 A.3d 120, 123 (Pa. Super. 2011) (citations modified). Because a demurrer tests solely the adequacy of the pleadings, "no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by a demurrer." ***Mellon Bank, N.A., v. Fabinyi***, 650 A.2d 895, 899 (Pa. Super. 1994). Moreover, "[w]hen reviewing a trial court's disposition of preliminary objections, this Court is only obligated to consider as true all of the well-pleaded *material facts* set forth in the complaint. This Court is not required to accept allegations to the extent that they constitute conclusions of law." ***Glassmere Fuel Serv., Inc., v. Clear***, 900 A.2d 398, 404 n.2

(Pa. Super. 2006) (emphasis in original; citations omitted); *accord Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 168 (Pa. Super. 2013).

With this standard in mind, we begin our discussion with the facts as pleaded by the Johnsons in their amended complaint, granting them the full benefit of their factual averments and all favorable factual inferences therefrom. Tarani Johnson purchased the Property on April 4, 2004. Amended Complaint at 1 ¶ 5 (unnumbered). By deed recorded on July 15, 2004, Tarani Johnson conveyed a one-half undivided interest in the Property to her mother, Joycelyn Johnson. *Id.* at 1 ¶ 6. On September 18, 2007, the Johnsons "attempted to convey the Premises, by Quit Claim Deed, to State Trustee Services, LLC[,] as Trustee of 28th St. Silver Apple Land Trust (hereinafter "the Trust") . . . . [The Trust] is a trust wherein [Tarani Johnson] is a named beneficiary." *Id.* at 1 ¶ 7. In October 2011, the Association filed a confession of judgment against the Trust "based upon an alleged breach of a condominium association agreement wherein [the Johnsons], or the current owner of [the Property], purportedly agreed to pay certain fees to the [A]ssociation owed by virtue of ownership of a unit in the [Association's] condominium complex." *Id.* at 1-2 ¶ 8. The Association then voluntarily stayed execution on "the confessed judgment against the Trust and allowed [Tarani Johnson] to attempt to sell the [Property] through [a] private sale." *Id.* at 2 ¶ 9.

In August 2012, Tarani Johnson received an offer to purchase the Property from Sandra Wang, a vice president of the Association, through

Wang's business entity. "Pursuant to that offer, [the Association] performed a title search on the [Property] and discovered that the Quit Claim Deed that attempted to convey title of the [Property] to the Trust was defective and failed to pass title to the Trust." *Id.* at 2 ¶ 10.

> Upon learning of the defective title in August 2012, [the Association], through its agents, attempted to have [the Johnsons] sign a corrective [d]eed that correctly conveyed title to the Trust. [The Johnsons] refused to execute that [d]eed and, instead, executed and recorded a corrective [d]eed, dated November 8, 2012[,] and recorded November 8, 2012 . . ., [that] conveyed title to the [Property] from the Trust to [the Johnsons].

*Id.* at 2 ¶ 11.[2]

Thereafter, the Association executed on the confessed judgment against the Trust, seeking to have the Property sold at a sheriff's sale. However, the court ordered a stay of the April 2013 sale, and, on or about June 4, 2013, the Property was "allegedly purchased by [the Association's] attorney . . . on behalf of [the Association] for $21,600[,] as evidenced by

---

[2]   Although the Johnsons attached a copy of this "corrective deed" to their amended complaint, it is unclear how, if they are correct that the Property had never been conveyed properly to the Trust, the Trust could have conveyed the Property back to the Johnsons. We also note that, while the Johnsons saw fit to attempt to clarify their individual ownership interests in the Property, they took no other action to address the pending confessed judgment or otherwise remove the obvious cloud from the title to the Property until after the sheriff's sale, upon the day of which they finally sought untimely to intervene in that action. Furthermore, the Johnsons do not contend that they did not have notice of the confessed judgment or sheriff's sale proceedings.

the [d]eed from the Sheriff of Philadelphia County, dated June 24, 2013[,] and recorded July 18, 2013." *Id.* at 2 ¶ 12. At the sheriff's sale, the Association paid only $3,016 "and failed to complete the [s]heriff [s]ale transaction despite the fact that the [s]heriff's [d]eed stated that the sum of $21,600 was paid at the time of the June 4, 2013 [sheriff's s]ale." *Id.* at 2 ¶ 13.

In the pleadings that follow these, the Johnsons assert a litany of putative reasons that the sale was "defective and invalid," which consist in part of conclusions of law that our standard of review does not require us to assume are correct, including the following:

- The Association failed to pay the full price for the Property.

- The Association failed to file a writ of possession with the Philadelphia Sheriff before the sale.

- The Association failed to file a complaint in ejectment against the Trust or the Johnsons, as required by rule to effectuate the purchase.

- In violation of governing rules, in July 2013, the sheriff's department voided the "defective" sheriff's deed via the Philadelphia Department of Records, as confirmed by an August 2, 2013 letter from that department. Following the Johnsons' commencement of this action by complaint on August 12, 2013, the Association "somehow obtained a reissuance of the June 24, 2013 defective deed" and rerecorded it on September 17, 2013.

*Id.* at 2-3 ¶¶ 13-19. In closing, the Johnsons insist that the Association "has no right, title or interest, at law or in equity, with respect to the [Property]." *Id.* at 3 ¶ 20.

- 9 -

In response to the amended complaint, the Association filed preliminary objections. Therein, they asserted that the Johnsons' and/or the Trust's rights in the Property had been extinguished by sheriff's sale. Thus, the Johnsons could not commence a quiet title action under Pa.R.C.P. 1061[3] because the court already had determined the ownership of the property, rendering the instant action an impermissible collateral attack on the earlier sheriff's sale. *See* Memorandum of Law in Support of Preliminary Objections by the Association at 7 (unnumbered). Because a sheriff's sale can only be attacked in a collateral proceeding in the presence of fraud or for want of the sheriff's authority to complete the sale, neither of which the Johnsons pleaded adequately within the four corners of their amended complaint, the Johnsons failed to state a claim upon which relief may be granted. *Id.* (citing *Keystone Collieries v. Mudge*, 100 A. 526, 527 (Pa. 1917)).

The trial court offered two related bases for sustaining the Association's preliminary objections: First, the Johnsons "have no legal interest in the Property since the deed to the Property was delivered to [the Association] following the sheriff's sale." Second, the Johnson's "Quiet Title action is an impermissible collateral attack on said sheriff's sale." T.C.O. at 5. Because we find that the trial court's second basis for sustaining the

_____

[3] Rule 1061 provides, in relevant part, that an action to quiet title may be brought "to determine any right, lien, title or interest in" property. Pa.R.C.P. 1061(b)(2).

- 10 -

Association's preliminary objections by itself requires us to affirm the trial court's ruling, we review only that aspect of its reasoning, which the trial court related as follows:

> [T]he instant Quiet Title Action is an improper collateral attack on the underlying confession of judgment action. A sheriff's sale and the underlying judgment normally may not be challenged in a collateral proceeding, including by a later action to quiet title. *Roberts v. Gibson*, 251 A.2d 799, 800 (Pa. Super. 1969) (citing *Caplan v. Kent*, 76 A.2d 764 (Pa. 1950)). The acknowledgment of a sheriff's deed passes valid title except in limited situations of fraud or where there is a lack of authority conducting a sale. *Roberts*, 251 A.2d at 801. In the instant matter, [the Johnsons] have attempted to assert that the sheriff's sale was predicated upon fraud, but have failed to provide any evidence whatsoever of fraudulent activity. [The Johnsons] have exhausted their attempts to challenge the sheriff's sale in the initial proceeding and are not entitled to continue to challenge the final result.

T.C.O. at 6.

In their first and second issues, the Johnsons contend that the trial court committed an error of law when it sustained the Association's preliminary objections on the basis of *res judicata* and collateral estoppel. They further contend that the trial court exceeded its limited review of the contents of the four corners of the complaint by taking judicial notice of the prior confession of judgment and sheriff's sale proceedings. "[T]he trial court only looked to [the Johnsons'] amended complaint to identify facts that were related to those allegedly pled in the Confession Action. The trial court completely ignored the facts set forth in the Amended Complaint that supported the issues . . . related to the first and second Sheriff's Deed(s)."

- 11 -

Brief for the Johnsons at 18 (citing **Kelly v. Kelly**, 887 A.2d 788, 791 (Pa. Super. 2005)).

We may dispense quickly with the Johnsons' first issue. Although the Association raised *res judicata* in its preliminary objections, the trial court did not purport to rule against the Johnsons on that basis. Whether a collateral attack on a sheriff's sale will lie presents a distinct issue from *res judicata*, as such. Thus, the Johnsons' first issue warrants no further discussion.

The Johnsons' argument in support of their second issue, concerning the trial court's taking notice of the confessed judgment and sheriff's sale proceedings, fares no better. Indeed, the case they cite in support of their claim that the trial court erred does more to undermine their argument than to support it. In **Kelly**, this Court held that, "[w]hen considering a demurrer[,] a court cannot ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court." 887 A.2d at 791 (citations and internal quotation marks omitted). However, this Court further elaborated that, if the appellant's complaint "reference[d] . . . the prior action," then "it would be appropriate for the court to take notice of it." *Id.* Similarly, in **220 Partnership v. Philadelphia Electric Co.**, 650 A.2d 1094 (Pa. Super. 1994), this Court made the following observation:

> [A] court must severely restrict the principle of judicial notice, as the purpose of a demurrer is to challenge the legal basis for the complaint, not its factual truthfulness. . . . A court, in ruling on

a demurrer, should refrain from noticing any fact [that] is not literally indisputable and which the parties could not reasonably raise in further pleadings or on argument at trial.

*Id.* at 1097 (citations and internal quotation marks omitted). Thus, the general preclusion of evidence of collateral proceedings yields to allow "notice of a fact [that] . . . is incorporated into the complaint by reference to a prior court action." *Id.*

Although in this case the Johnsons omit specifically to refer to, *e.g.,* certain of their and the Trust's filings in connection with the sheriff's sale, they nonetheless refer at length to the sheriff's sale proceedings, incorporating all of the most critical procedural steps in that process into their complaint. Having introduced the facts and details of those prior actions in their own complaint, the Johnsons left the trial court a simple choice: Accept these selective references to the prior proceedings without further scrutiny, or take judicial notice of the proceedings *in toto* to provide context for evaluating the Johnsons' claims relative to that prior action, which lay at the heart of the Johnsons' instant quiet title action. Nothing in our case law suggests that one can rely pervasively upon past proceedings to support one's complaint while maintaining that the trial court errs in considering those proceedings in their full context.[4]

_____

[4] The Johnsons object to the trial court's observation that they declined to appeal the trial court's denial of their motions to intervene in the sheriff's sale of the Property. They argue, based upon a note to Pa.R.A.P. 341, that they were barred categorically from doing so. *See*, *inter alia*, Brief for the
*(Footnote Continued Next Page)*

In a related contention regarding the propriety of the trial court's review of the Association's preliminary objections, and specifically the recurring claim that the court improperly looked outside the Johnsons' pleading and made impermissible findings of disputed fact, the Johnsons argue that the trial court improperly assumed there was the one sheriff's deed, delivered on June 2, 2013, rather than the two posited by the Johnsons.

> The unrefuted facts presented to the trial court were the facts contained in the amended complaint related to the first and second deeds. Despite this fact, the trial court completely ignored these facts of record and determined that there was only one deed that was recorded once. It cannot be said that this determination by the trial court was a "reasonable inference" deducible from the well-pleaded material facts in the amended complaint since this finding is in direct contravention to the facts recited in the [complaint].

Brief for the Johnsons at 22 (citations omitted). These portions of the complaint are shot through with conclusions of law that neither the trial

_(Footnote Continued)_ _____

Johnsons at 21 (citing T.C.O. at 6). However, the note to Rule 341 also lists a series of orders that, while they are not appealable as final orders, might be appealed under Rules 312 (interlocutory appeals by permission) or 313 (collateral orders). The Johnsons did not seek recourse to either of these provisions and do not now acknowledge these familiar methods by which such orders may be appealed. Accordingly, it is incorrect that the Johnsons could not promptly, non-frivolously have sought appellate review of the trial court's denial of their motions to intervene and to open or strike the confession of judgment. Thus, the trial court did not err in noting that the Johnsons' voluntarily declined to exhaust the potential appellate remedies available to them.

court nor this court is obligated to accept as true or construe in favor of the complainant. **See Glassmere Fuel Serv.**, *supra*.

In tandem with the Johnsons' second issue, we also must consider what we have renumbered the Johnsons' third issue. Therein, the Johnsons argue that the trial court improperly refused to consider a putative request to the court to review *in camera* and under seal an affidavit from an unnamed deputy sheriff that was attached as exhibit B to the Johnsons' filing in opposition to the Association's preliminary objections. The unsworn, unsigned document in question is sandwiched as exhibit B between a transcript of a rule to show cause hearing in the sheriff's sale proceedings and a reproduction of the amended complaint. It provides in full:

> **The affidavit of the Sheriff's Department Deputy Sheriff involved in the internal affairs unit investigation of this matter is in the possession of Plaintiff's counsel.**
>
> **Due to the fact that this is an active, on-going investigation involving fraud and theft charges that may involve other parties not yet identified, [the Johnsons'] counsel respectfully requests that this affidavit be reviewed by the court *in camera* and placed under seal— FOR JUDGE'S EYES ONLY.**

Johnsons' Memorandum of Law in Support of their Response to the Association's Preliminary Objections, Exh. B (emphasis in original).

The trial court acknowledged the existence of this attachment, but emphasized that the Johnsons made no proper request for the trial court to review any such affidavit *in camera* or to admit it under seal. The court explained that "[w]ithout any evidence, [the trial court] cannot ascertain

that any fraud has occurred." T.C.O. at 3. We add to the trial court's apt observation that the document itself is hopelessly vague regarding the putative affidavit to which it refers and offers no proffer regarding **how** the affiant would inform the Johnsons' claims or render the Association's preliminary objections unsustainable.[5]

This brings our discussion full circle. Labor as the Johnsons might to distinguish this claim from the earlier confession of judgment and sheriff's sale proceedings, it is simply unreasonable, in light of the Johnsons' unambiguous pleadings, to ask a court to ignore the fact that the amended complaint's entire substance is comprised of a lengthy attack on the earlier proceedings that led to the legally consummated sheriff's sale. That is to say, it must be understood as a collateral attack on the sheriff's sale, no matter how elliptically fashioned.

_____

[5] In their response to the Association's preliminary objections, the Johnsons cite the exhibit in support of their averments that the sheriff's deed to the Property was delivered in violation of governing rules because the listed purchase price allegedly was not remitted in full to the sheriff. **See** Johnsons' Response to the Association's Preliminary Objections at 3 ¶ 10, 6 ¶ 39; Johnsons' Memorandum of Law in Support of Response to the Association's Preliminary Objections at 2 (unnumbered). In none of these instances do the Johnsons indicate how the putative sheriff's affidavit to which the exhibit refers would support those claims. Moreover, averments regarding the sheriff's compliance with governing rules that the Johnsons neither cite nor describe are averments of law to which no deference is owed. Nothing in the response, the brief, or in the vague implications regarding what the alleged sheriff's affidavit might say contravenes or disputes the fact that a sheriff's deed for the Property was delivered to the Association on June 24, 2013, nearly two months before the Johnsons filed the instant complaint.

About such a collateral attack, our Court has spoken clearly:

[A]n attack on a sheriff's sale usually cannot be made in a collateral proceeding.  In **Caplan v. Kent**, 76 A.2d 764 (Pa. 1950), it was held that a sheriff's return, regular on its face, could not be attacked collaterally in a bill in equity to quiet title.  "Confirmation of a sheriff's deed cures irregularities and defects, which make the sale voidable * * *."  **McLanahan v. Goodman**, 108 A. 206, 208 (Pa. 1919).  In **Mencke v. Rosenberg**, 51 A. 767, 769 (Pa. 1902), the court said in reference to an ejectment action:  "This is a proceeding collateral to that under which the land was sold.  The acknowledgment of the sheriff's deed passed a valid title to the purchaser, unless there was fraud or want of authority in the sale."  After reiterating this rule in **Knox v. Noggle**, 196 A. 18 (Pa. 1938), the court added:  "(T)he distinction is * * * between irregularities in the proceedings, misdescriptions of the property, the sale of several tracts as an entirety, **defect of title**, and similar objection, on the one hand, **all of which are foreclosed as defenses by delivery of the sheriff's deed**, and, on the other, attacks upon the sale on the ground that it was unauthorized, or vitiated by fraud, in which cases the right of redress survives such delivery."  196 A. at 19-20.

**Roberts**, 251 A.2d at 800-01 (citations modified; emphasis added).

To survive a demurrer, a plaintiff asserting fraud must plead the factual basis for that claim with particularity:

"In order to protect those against whom generalized and unsupported fraud may be levied, the Pennsylvania Rules of Civil Procedure require that fraud be averred with particularity."  **Presbyterian Med. Cen. v. Budd**, 832 A.2d 1066, 1072 (Pa Super. 2003) (quotation marks omitted);  **see** Pa.R.C.P. 1019(b).

> While it is impossible to establish precise standards as to the degree of particularity required in a given situation, two conditions must always be met.  The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they

must be sufficient to convince the court that the averments are not merely subterfuge.

*Kelshaw*, 611 A.2d at 1235 (quoting **Bata v. Central Penn Nat'l Bank of Phila.**, 224 A.2d 174, 179 (Pa. 1966)).

**Youndt v. First Nat'l Bank of Port Allegany**, 868 A.2d 539, 544-45 (Pa. Super. 2005) (citations modified).

The Johnsons' amended complaint does not even contain the word "fraud" or allegations that, read in the light most favorable to the Johnsons, provide a factual basis upon which it might be found that the Association, the sheriff's office, or anyone else privy to the events underlying this case committed fraud. Although allegations of "fraud" finally appear in the Johnsons' response to the Association's preliminary objections, the Johnsons' bare reliance upon an unfurnished affidavit without any material proffer does not provide the particularity necessary to survive a demurrer.[6] Consequently, the Johnsons failed to plead a claim of fraud sufficient to enable them to proceed with their collateral attack on the sheriff's sale of the Property.

To the extent the Johnsons' argument sounds in what the **Knox** Court identified as a "defect of title," it is clear that the undisputed delivery of the

_____

[6] Moreover, as the Johnsons repeatedly emphasize in other connections, it is the complaint alone that governs whether a demurrer will be sustained. Allegations of fraud and putative support for same that do not appear in the complaint are immaterial to the legal sufficiency of the pleading. **See Fabinyi**, 650 A.2d at 899 ("[N]o testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by a demurrer.").

sheriff's deed in this case vitiated that defect such that no collateral attack on the sale would lie. **See** T.C.O. at 5-6 (noting that the sheriff's deed was acknowledged by the Association on June 24, 2013); **Roberts**, 251 A.2d at 800-01 (noting that any defect of title conveyed following a sheriff's sale is cured by delivery of the deed). The Johnsons provide no case law to the contrary, and they make no effort to preclude the application of this bedrock principle in the instant case. Consequently, the Johnsons' numerous challenges to the trial court's ruling fail before the limitations Pennsylvania courts employ to ensure that sheriff's sales may be attacked in collateral proceedings only when the underlying proceedings rendered the sale void rather than merely voidable. **See Roberts**, *supra*. The Johnsons' complaint's factual averments, even read in the most favorable light, do not establish that the sale at issue was void on its face or the product of fraud. At most, the averments establish that the title was voidable by virtue of one or more defects, which were cured as a matter of law upon delivery of the title to the Association. Consequently, the instant action is an impermissible collateral attack on that sale, and the trial court did not err in so ruling.

This leaves only what we have denominated the Johnsons' fourth issue. Therein, the Johnsons contend that, because they failed to achieve the desired result during the earlier confession of judgment and sheriff's sale proceedings, which were heard before the same trial judge as the instant matter, the judge should have been disqualified from deciding the instant case. **See** Brief for the Johnsons at 27. Acknowledging that, typically, the

issue of "judicial bias" must be presented first before the trial court, the Johnsons attempt to sidestep this issue as follows:

> [The Johnsons] were unable to raise the issue of bias before the trial [c]ourt since evidence of bias was not revealed until after the court ruled on [the Association's] preliminary objections. Prior to that time, there was no reason to believe that the trial court's review, and final decision, in the instant case would rely solely upon [the Association's] assertions as set forth in its preliminary objections and upon the trial court's findings and opinions developed in a prior case that did not involve [the Johnsons].

*Id.* at 27. The Johnsons go on to note that the litany of complained-of decisions made by the trial court—all of which we have found do not constitute errors of law or abuses of discretion—"demonstrate the type of egregious judicial misconduct proscribed by the appellate court[s]. This utter disregard of the facts by the trial court[] as set forth in [the Johnsons'] amended complaint[] clearly demonstrated bias against [the Johnsons]." *Id.* In short, the Johnsons acknowledge that nothing about the earlier decision by itself signaled bias, but submit that the mere fact of a second adverse ruling in this case does precisely that. Having found that the trial court's ruling was necessitated by the law precluding collateral attacks on sheriff's sales, we can conceive of no basis upon which to find that the trial court acted out of bias. This issue, too, lacks merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/13/2015