J-S07032-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DIANE CONRAD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN CONRAD | : | No. 971 MDA 2025 |

Appeal from the Order Entered June 20, 2025
In the Court of Common Pleas of Berks County
Civil Division at No:  12 18628

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                 **FILED APRIL 06, 2026**

In this action related to the parties' divorce, Diane Conrad (Wife) appeals from the order which granted the request of Shawn Conrad (Husband) and dismissed her Petition to Determine Status of Trust/Retained Money.  We affirm.

This case "has a very long history with constantly revolving sets of Judges and attorneys."  Trial Court Opinion (TCO I), 6/20/25, at 1 n.1.  The trial court explained:

> The parties were married on April 8, 1995 in Luzerne County, Pennsylvania.  [Wife] filed for [d]ivorce on August 2, 2012.  The Divorce Decree was entered on February 5, 2016….  The Decree incorporated the parties' Post Nuptial Agreement (PNA), dated December 2, 2015.  A large part of the marital assets to be divided under the PNA involved [Husband's] three … retirement accounts.  The PNA provided that three [Qualified Domestic Relations Orders (QDROs)] were to be drafted for these assets within thirty (30) days of the December 2, 2015 date.  This was not timely done.

Nearly four years after the Divorce Decree was entered, on June 25, 2019, the parties entered a Stipulation and Agreement for Entry of a Domestic Relations Order regarding [Husband's] Pennsylvania State Employees Retirement Systems (SERS) State Police Pension. On that same date, a Domestic Relations Order also divided [Husband's] Air Force military pension. The third retirement plan was a Commonwealth of Pennsylvania Deferred Compensation Plan (DCP) … that was resolved by a Domestic Relations Order dated October 17, 2019.

On February 5, 2021, [Husband] filed a Motion to Vacate Decree and Amend QDRO, to which [Wife] filed a Response and Counterclaim for a Constructive Trust. By Order of October 17, 2022, the [trial court] dismissed both [Husband's] Motion and [Wife's] Counterclaim. On November 15, 2022, [Wife] filed a Notice of Appeal to the Superior Court. On August 1, 2023, the Superior Court, at No. 1604 MDA 2022, affirmed [the trial court's] Order of October 17, 2022.

Trial Court Opinion (TCO II), 8/25/25, at 1-2 (footnote omitted).

In the prior appeal, we held that the trial court did not err in denying Wife's request for a constructive trust in relation to Husband's retirement accounts. *Conrad v. Conrad*, 304 A.3d 715, 1604 MDA 2022, 2023 WL 4876885 (Pa. Super. filed Aug. 1, 2023) (unpublished memorandum). Wife had claimed "Husband withheld at least $50,000.00 of funds to which she was entitled under the PNA." *Id.* at 4. In rejecting this claim, we explained:

Wife has not raised sufficient issues of material fact to entitle her to either a hearing or judgment in her favor. Wife does not aver that Husband's option election, lump sum withdrawal, or "possible" withdraws, infringed on her entitlement to 60% of the marital share as set forth in the parties' Agreement, which was filed as a QDRO with the Berks County Prothonotary's Office on June 25, 2019. …

Moreover, Wife does not aver in her counterclaim that she did not receive her allocation. Nor does Wife aver any facts that raise an

issue with respect to fraud, duress, or misrepresentation with respect to the parties' Agreement or the domestic relations order implementing the parties' rights under that Agreement.

*Id.* at 6-7 (citations omitted). Finally, we noted:

[A]t this point, Wife has waived her claim since she knew that Husband's pension was in pay status at the time of execution of the June 25, 2019 Agreement, and this acknowledgement was memorialized in the Agreement. Also reflected in the Agreement is Husband's election of an annuity pursuant to the terms of the Maximum Single Life Annuity option, and Wife's marital share was already calculated under the QDRO. As noted above, Wife makes no claim of fraud, misrepresentation, or duress with respect to that Agreement.

*Id.* at 7 n.5.

Nearly two years later, Wife filed the underlying Petition to Determine Status of Trust/Retained Money. Wife averred:

7. On June 25, 2019, two of the three necessary QDRO's were finally filed with and signed by the [trial c]ourt.

8. However, Husband had already retired and began drawing on his pensions. By drawing on the pensions, Huband had failed to make a number of payments to Wife.

9. Again, for reasons that are unclear, this issue was never presented to the [trial c]ourt in writing or in any coherent fashion.

Petition to Determine Status of Trust/Retained Money, 3/31/25, at ¶ 7-9. Wife asserted that she was "only seeking to be paid what she was entitled to be paid under the agreement." *Id.* at ¶ 21.

In response, Husband filed a motion to dismiss Wife's petition. Husband averred that Wife was "attempting to relitigate the issue of the QDRO(s) which have been entered as Orders and litigated on appeal, *i.e.*, collateral estoppel."

Motion to Dismiss Petition to Determine Status of Trust/Retained Money 4/11/25, at ¶ 18.

The trial court held a hearing on May 20, 2025.[1]  On June 20, 2025, the trial court entered an order and opinion granting Husband's motion and dismissing Wife's petition "on the basis of collateral estoppel."  Order, 6/20/25, at 1.  Wife filed a timely notice of appeal on July 21, 2025.  Both Wife and the trial court have complied with Pa.R.A.P. 1925.

Wife presents the following issues for review:

1. Whether the [trial c]ourt erred in granting [Husband's] motion to dismiss [Wife's] Petition to Determine Status of Trust/Retained Money?

2. Whether the [trial c]ourt erred in finding [Husband] was not subject to a Court Order in terms of retaining proceeds of his retirement accounts for possible payment to  [Wife]?

3. Whether the [trial c]ourt erred in finding that the issue had been waived/previously litigated as [Wife] has never had the opportunity to address the merits of payments to [Husband] from his retirement accounts on the record?

Wife's Brief at 4.

We review the trial court's order for an abuse of discretion.  ***See Kulp v. Kulp***, 920 A.2d 867, 870 (Pa. Super. 2007).  Although Wife presents three issues in her statement of questions, she notes that the "three issues presented herein are consolidated for argument."  Wife's Brief at 10.

---

[1] The record does not contain notes of testimony from the May 20, 2025 hearing and there is no indication that either party ordered the transcript.

Wife states that she "had an issue with not being paid for the QDROs. This came to a head at a court hearing." *Id.* Wife acknowledges that a hearing occurred on May 20, 2025, but quotes an excerpt from a hearing that occurred on October 17, 2019 in claiming she "was not protected," and Husband "never paid [Wife] the money in dispute."[2] *Id.* at 11. Wife also asserts the trial court "never determined the issue." *Id.* Wife's argument is unavailing.

The trial court described Wife as "attempt[ing] to put old wine in a new bottle by raising a new theory of relief." TCO I at 5. In the opinion issued with its order, the trial court stated:

> Since [Wife] has again failed to show authenticated proof of shortfalls in the amounts agreed to be paid out to her under the QDROs, we cannot conclude with any certainty that there has been economic injustice in this case. Even if we could, [the trial court] has already decided that issue.

*Id.* at 5-6. The trial court observed that the "determination in the prior proceeding is essential to the judgment in this case," and "[t]he fact [Wife] is now asking for equity, but not in the form of a constructive trust, is of no moment." *Id.* at 10.

After Wife filed this appeal, the trial court further explained:

> Collateral estoppel applies in a case if (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against

---

[2] Regarding the May 20, 2025 hearing, Wife states only that a "hearing/argument was held. [Husband] did not testify or present evidence." *Id.* at 7.

whom the plea is asserted was party or in privity with a party in the prior case; (4) the party or person in privity to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding[;] and (5) the determination in the prior proceeding was essential to the judgment. ***Chada v. Chada***, 756 A.2d 39, 42-43 (Pa. Super. 2000).

By Order of October 17, 2022, the [trial court] dismissed [Wife's] Counterclaim for a Constructive Trust. It was clear from the parties' Stipulation and Agreement, filed June 25, 2019, that the accompanying Domestic Relations Order (QDRO), once approved by SERS, would result in payments being made directly to Wife *by SERS* of any remaining portion of the equitable distribution portion of the marital property component. Wife's marital share was already calculated under the QDRO and was set aside by SERS, for Wife as the Alternate Payee, [and] we ordered the Plan Administrator of the SERS pension fund to provide a full status update to [Wife], as the Alternate Payee, concerning her portion of the retirement plan…. When [Wife] finally signed the Stipulation and Agreement, she knew the pension was already in pay status. The QDRO specifically stated that the Alternate Payee was to do the paperwork to begin her monthly payments. SERS was to pay her, not [Husband]. …

[Wife] argues that she is now proceeding under equitable distribution, not relitigating the QDRO. This is a distinction without a difference. The issue decided [previously], whether [Husband] must pay [Wife] her portion of the retirement funds that he allegedly wrongfully withdrew, is identical to the one presented here. There was a judgment on the merits, affirmed and made final by the Superior Court. The party against whom the plea is asserted, [Husband], was a party with [Wife] in the prior [proceeding]. The determination in the prior proceeding was essential to the judgment now. All five elements of collateral estoppel have been met. We find that it applies.

TCO II at 3-4 (italic emphasis in original).

Upon review, we agree with the trial court. This case is similar to ***Kelly v. Kelly***, 887 A.2d 788 (Pa. Super. 2005). In ***Kelly***, the parties were divorced

in 1999, but litigation "continued since and center[ed] upon [the wife's] claim to a share of [the husband's] railroad retirement 'Tier 2' benefits." ***Id.*** at 789.

Approximately four years after the parties in ***Kelly*** were divorced, the wife filed a complaint in assumpsit. ***Id.*** The wife alleged that the parties had entered into an agreement regarding the husband's railroad retirement benefits, and contrary to the agreement, she did not receive "any portion" of payments, and thus the husband was unjustly enriched. ***Id.*** The husband in ***Kelly*** filed preliminary objections based on *res judicata*,[3] and the trial court entered an order sustaining the preliminary objections. The trial court found "the issues [the wife] raised in the complaint, regardless of how they were framed, were precisely the same as those of which it had disposed" in a prior order. ***Id.*** (citations omitted). The prior order had been entered "in the context of the divorce action, in response to a pleading filed by [the wife], entitled 'petition to enforce marriage settlement agreement,' in which she apparently sought a share of [the husband's] Tier 2 railroad benefits." ***Id.*** at 789-90. We explained our agreement with the trial court:

> Application of the doctrine of *res judicata* requires that the two actions possess the following common elements: (1) identity of

---

[3] We note that "*res judicata* is an umbrella term encompassing both claim preclusion and issue preclusion." ***In re Coatesville Area School District***, 244 A.3d 373, 378 n.5 (Pa. 2021). However, *res judicata* typically refers to claim preclusion, and collateral estoppel refers to issue preclusion. ***See id.***; ***see also Khalil v. Travelers Indemnity Company of America***, 273 A.3d 1211, 1224 (Pa. Super. 2022) (*res judicata* bars later claims that either were raised or that could have been litigated in the prior proceeding but were not, and collateral estoppel only bars litigation of issues that were actually litigated in the prior action).

the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties. …

[I]t is clear that *res judicata* applies here. [The wife] quite clearly is seeking to enforce the same right, her right to a portion of [the husband's] Tier 2 railroad retirement benefits, and the same alleged wrong [by the husband], his receipt of these benefits without giving [the wife] a share. [The wife] is unmistakably complaining of the same acts, makes the same demand for recovery, and is seeking compensation for the same damages. It is irrelevant that [she] first brought the claim as a petition to enforce the marriage settlement agreement in the context of a divorce action, and now as a claim of unjust enrichment[.]

*Id.* at 792 (citations and quotation marks omitted).

Consistent with both *Kelly* and the trial court in this case, we conclude that Wife is not entitled to relief based on the doctrine of collateral estoppel.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/06/2026

- 8 -