J-A27010-20

2022 PA Super 68

| | |
|---|---|
| DR. AHLAM KHALIL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TRAVELERS INDEMNITY COMPANY OF AMERICA, GLENN CAMPBELL, ESQUIRE, WILLIAM S. FERREN AND ASSOCIATES, TRAVELERS INDEMNITY COMPANY, MONICA O'NEILL, THOMAS, THOMAS AND HAFER, PIER 3 CONDOMINIUM COMPANY, PIER 3 CONDOMINIUM ASSOCIATION, PIER 3 AND FIRST SERVICE (WENTWORTH) | |
| Appellees | No. 1482 EDA 2019 |

Appeal from the Order Dated March 25, 2019
In the Court of Common Pleas of Philadelphia County
Civil Division at No: April Term, 2014, No. 01925

BEFORE: STABILE, J., NICHOLS, J. and COLINS, J.[*]

OPINION BY STABILE, J.: **FILED APRIL 18, 2022**

Appellant, Dr. Ahlam Khalil, appeals from an order granting summary judgment against her and in favor of all Appellees captioned above. We affirm.

### Introduction

Appellant accuses Appellees of fraudulent conduct in two prior lawsuits, the water damage action and the Pier 3 action. Appellant owns a condominium unit in the Pier 3 condominium building in Philadelphia. Appellant sued Pier 3's insurer, Travelers, after Appellant's condominium unit incurred water

_____

[*] Retired Senior Judge assigned to the Superior Court.

damage (the water damage action). Pier 3 filed a separate action against Appellant for unpaid condominium fees (Pier 3 action), to which Appellant filed counterclaims against Pier 3 and its management company, Wentworth. Prior to trial in the water damage action, Appellant settled her claim against Travelers. The plain language of the Travelers release barred Appellant from pursuing counterclaims against Pier 3 in the Pier 3 action. Appellant argues that the release she signed explicitly preserved her right to pursue counterclaims in the Pier 3 action, but Travelers fraudulently altered the release to state that it barred all such counterclaims. Based on the altered release, she claims, Pier 3 and Wentworth obtained dismissal of Appellant's counterclaims in the Pier 3 action.

In the present action, Appellant seeks monetary damages against Appellees, which include Travelers, Pier 3, Wentworth, and the attorneys who represented these parties in the water damage and Pier 3 actions. We conclude that the trial court properly granted summary judgment to all Appellees under the doctrine of res judicata. Res judicata protects Travelers because Appellant could have raised fraud in the water damage action but failed to do so until long after the case was marked settled, discontinued and ended. Similarly, res judicata protects Pier 3 and Wentworth because Appellant could have raised fraud in the Pier 3 action, but (1) she failed to do so prior to trial, and (2) while she raised fraud in post-trial motions, she abandoned this claim during her appeal to the Commonwealth Court. Finally,

res judicata protects the attorney Appellees because they were in privity with the non-attorney Appellees during the water damage and Pier 3 actions.

We begin by summarizing the water damage action and the Pier 3 action. We also synopsize a lawsuit Appellant filed against her former attorneys in the water damage and Pier 3 actions (***Khalil v. Williams, Cuker & Berezovsky, P.C.***) (referred to below as "***Khalil III***").

### **Inception of Water Damage and Pier 3 Actions**

Since 1997, Appellant has owned a condominium unit in Pier 3's condominium building in Philadelphia, Pennsylvania. On May 25, 2007, Appellant's unit sustained damage caused by a water leak in an adjacent unit owned by her neighbors, Jason and Anne Marie Diegidio. Travelers[1] was the insurer of Pier 3 and Pier 3's management company, Wentworth Property Management ("Wentworth"). Appellant also had a personal homeowner's insurance policy issued by State Farm Fire and Casualty Company.

On July 16, 2008, Appellant commenced the water damage action, an action alleging negligence against the Diegidios, State Farm, and Travelers. Monica O'Neill, Esquire, an attorney employed by Thomas, Thomas & Hafer, LLP,[2] represented Travelers in the water damage action.

---

[1] Various Travelers entities were either parties during the water damage action or the insurer for parties in the Pier 3 action. The parties refer to these entities collectively as "Travelers," and we will do the same.

[2] We refer to O'Neill and the Thomas firm collectively as "Thomas."

In 2009, the Pier 3 action began when Pier 3 sued Appellant for condominium association fees incurred after Appellant left her unit due to water damage. Appellant filed a counterclaim against Pier 3 asserting that she refrained from paying fees because the water damage had not been rectified. Appellant also filed a joinder complaint against the Diegidios and Wentworth raising the same claims that she raised in the water damage action. The court subsequently approved a stipulation among all parties in which Appellant withdrew her claims against the Diegidios with prejudice.

Travelers defended Pier 3 and Wentworth in their capacity as defendants on the counterclaims and joinder complaint. Travelers hired Glenn Campbell, Esquire of William J. Ferren & Associates[3] to defend Pier 3 and Wentworth against Appellant's counterclaim and joinder complaint.

### Water Damage Action Settled and Court Adjudicates Appellant's Motion to Vacate Settlement

Prior to trial, on or about May 12, 2011, Appellant and Travelers reached a settlement agreement in which Appellant agreed to settle her claims against Travelers for $17,500.00. As a result of the settlement, Travelers was excused from attending trial. O'Neill prepared a release and sent it to Appellant's attorney, Beth Cole, Esquire, an attorney employed by Williams, Cuker & Berezovsky, P.C. ("Williams").

---

[3] We refer to Campbell and William J. Ferren & Associates collectively as "Ferren."

- 4 -

The release listed Appellant as the "Releasor," Travelers as the "Releasee," and Pier 3 as the "Releasee's Insured." The release provided that Appellant "forever discharge[d] . . . Releasee of and from any and all claims of whatsoever kind or nature arising from the incident occurring at [the Unit]." *Id.* Appellant further agreed "to terminate all controversy and/or claims for injuries or damages against Releasee, and Releasee's Insured, and any affiliated or related people or entities, both known and unknown, including future developments thereof, in any way growing out of or connected with said incident." *Id.* At the conclusion of the release, Appellant again "specifically agreed that this [release] shall be a complete bar to all claims or suits against Releasee, Releasee's Insured, and any affiliated or related people or entities, both known and unknown, for injuries or damages of whatsoever nature resulting from or to said incident [at the Unit.]" *Id.* at 1-2.

Both Appellant and Cole signed the release, and on May 17, 2011, Cole's secretary emailed the signed release to O'Neil. Several emails indicate that both before and after Appellant signed the release, her attorney advised her that the release was limited to duct work in her condominium and did not affect her counterclaims in the Pier 3 action.

The water damage action proceeded to trial against the remaining defendants, the Diegidios and State Farm. During trial, Appellant agreed on the record to settle her claims against the Diegidios and State Farm for $50,000 and $40,000, respectively. Appellant further agreed to release Jason

- 5 -

Diegidio, individually and in his capacity as a condominium board member, from the Pier 3 and water damage actions. On May 26, 2011, the trial judge, the Honorable Frederica Massiah-Jackson, marked the water damage action "settled by the parties."

Subsequently, Appellant refused to accept any of the payments in the water damage action. As a result, on September 30, 2011, Judge Massiah-Jackson held a hearing to review and confirm the terms of the settlement agreements. During the hearing, Appellant raised three objections to the settlement agreements: (1) following settlement, Appellant determined that a large quantity of her personal property, which had been placed into storage with two separate third-party companies by State Farm, was missing and/or destroyed, a loss not envisioned at the time of the settlement and for which Appellant held State Farm accountable; (2) Appellant contended that she never agreed to release Jason Diegidio, either individually or in his capacity as a board member, from the Pier 3 action; and (3) Appellant argued that the Travelers release in the water damage action would adversely affect her counterclaims in the Pier 3 action.

Appellant's attorney, Gerald Williams, Esquire of the Williams firm, stated his position that the release did not affect Appellant's counterclaims. N.T., 9/30/11, at 12. Later in the hearing, Appellant told the court, "I [sought] two other legal counselor opinions to understand the release, consultations for the release. And both of them advise[d] me the release as is will

compromise my right for the losses and for the Pier 3 [litigation]." *Id.* at 23-24. In addition, Appellant stated that during a pretrial conference in the Pier 3 action, Pier 3's attorney claimed that the release precluded her claims in the Pier 3 action. *Id.* at 24 ("the first thing that the lawyer for the condo association, they start flagging the [release] which I signed. And they said the case is settled. She has no right").

On October 19, 2011, Judge Massiah-Jackson entered an order directing each defendant to deposit its respective settlement amount into a designated court account, pending a motion for release of funds. Within the next thirty days, Appellant did not move to vacate this order or appeal to the Superior Court. On November 14, 2011, the full settlement amount as to all defendants, $107,500, was placed in escrow with the court. These funds remain in escrow today.

**Trial Court in Pier 3 Action Holds That Travelers Release Barred Appellant's Counterclaim Against Pier 3 and Joinder Claim Against Wentworth**

On April 20, 2012, Pier 3 and Wentworth, represented by Ferren, filed a motion for summary judgment in the Pier 3 action, claiming that the language of the Travelers release in the water damage action extinguished all claims against them. On July 13, 2012, Appellant filed a response arguing that the release did not preclude her counterclaim against Pier 3 or her joinder claim against Wentworth. Appellant did not raise the issue of fraud in her response. Nor did Appellant attempt to amend her pleadings to assert fraud.

The court denied the motion for summary judgment. Immediately before trial, however, Pier 3 and Wentworth renewed their argument that the release precluded Appellant's claims. The trial judge, the Honorable George Overton, agreed and dismissed Appellant's claims against Pier 3 and Wentworth.

On July 10, 2012, a jury entered a verdict in favor of Pier 3. Appellant filed post-trial motions claiming, *inter alia*, that the trial court erred in dismissing her claims against Pier 3 and Wentworth pursuant to the release because the release was entered into by fraud. Appellant's Post-Trial Motions, at ¶ 55. Appellant claimed that when Pier 3 and Wentworth raised the release prior to trial, her attorney "attempted to point out" that the release was unenforceable "due to . . . fraud . . . but was not permitted to set forth the grounds thereof at length." *Id.* at ¶ 46 n.3.

Following entry of judgment in August 2012, Appellant appealed to this Court, which ordered the case transferred to the Commonwealth Court pursuant to 42 Pa.C.S.A. § 762(a)(5)(1) and (ii). *See id.* (giving Commonwealth Court exclusive jurisdiction over appeals involving all actions or proceedings relating to not-for-profit corporations). Appellant reasserted the issue of fraud in her Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court, however, declined to address fraud in its opinion, observing, "[n]either the validity of the release nor the circumstances in which the release was signed were issues before this Court." Trial Ct. Op., 11/21/12,

at 5. The court stated that "the only issue before this Court, with regards to the release, was to determine whether the language of the release released both Pier 3 and Wentworth." *Id.*

**Water Damage Action Again Ordered Settled, Discontinued and Ended and Appeal Quashed**

On November 14, 2012, Appellant's counsel, Williams, filed a motion to withdraw its appearance. On January 7, 2013, the Honorable Sandra Mazer Moss granted the motion to withdraw and entered an order expressly stating that the case was "settled, discontinued, and ended."

During the hearing, Judge Moss questioned Appellant regarding the finality of the settlements reached in the water damage action. In particular,

> Judge Moss inquired whether Appellant had ever moved to vacate the settlements or appealed either Judge Massiah-Jackson's May 25, 2011 determination that the case was settled or the [October 19,] 2011 order to escrow the funds. Appellant indicated that she had not.

*Khalil v. Diegidio*, 2014 WL 10937477, *2 (Pa. Super., Apr. 10, 2014) (unpublished) ("*Khalil I*"). Appellant objected to the court's decision to mark the case settled, discontinued and ended, stating she believed that the sole purpose of the hearing was whether to permit Williams to withdraw. N.T., 1/7/13, at 16. Judge Moss replied, "I am deciding that the case is settled, because there's nothing more at issue. A judge approved the settlement and a judge escrowed the funds, so I've used my judicial discretion to say the case is settled." *Id.*

On February 6, 2013, Appellant filed a *pro se* motion for reconsideration of Judge Moss's January 7, 2013 order and a "motion to vacate and/or set aside stipulation for settlement and release(s)" with Judge Massiah-Jackson. In her motion to vacate, Appellant alleged the release was the product of "mistake and/or fraud." *Id.* at ¶ 18(3). On February 21, 2013, Judge Moss entered an order denying Appellant's motion for reconsideration. On March 15, 2013, Judge Massiah-Jackson entered an order denying Appellant's motion to vacate.

On March 19, 2013, Appellant filed a notice of appeal from Judge Moss's January 7, 2013 order marking the case settled, discontinued, and ended, Judge Moss's February 21, 2013 order denying her motion for reconsideration, and Judge Massiah-Jackson's March 15, 2013 order denying her motion to vacate. Judge Massiah-Jackson authored a Pa.R.A.P. 1925(a) opinion in which she suggested that (1) Travelers and its counsel knew that the release was not supposed to impair Appellant's claims against Pier 3, (2) Pier 3 and its counsel "had the transcripts [from the water damage action] and were aware of the actual terms and conditions of the 2011 settlement," and (3) it was improper and unethical to use the "shield" of the Travelers release as a "sword" in the Pier 3 action. Trial Ct. Op., Apr. 24, 2013, at 4-5. Nevertheless, Judge Massiah-Jackson reasoned that "this Court has no jurisdiction to vacate the 2011 settlement." *Id.* at 5.

On April 10, 2014, consistent with Judge Massiah-Jackson's determination that she lacked jurisdiction to vacate the settlement, this Court quashed Appellant's appeal as untimely. **Khalil I**, 2014 WL at 10937477, *1. We reasoned that Judge Massiah-Jackson's October 19, 2011 order "[found] valid settlements as to all three defendants [in the water damage action], and directed each defendant to deposit its respective settlement amount into a designated court account, pending a motion for release of funds." **Id.** at *2.

> We have held that "[m]arking a case settled, discontinued and ended has the same effect as the entry of judgment." **Kaiser v. 191 Presidential Corp.**, 454 A.2d 141, 144 (Pa. Super. 1982). The record reflects that [the water damage action] was marked as settled first by Judge Massiah-Jackson on October 19, 2011, nearly two years before the appeal was taken, and again by Judge Moss on January 7, 2013, a full two months before Appellant's notice of appeal was filed. Even assuming, *arguendo*, that Judge Moss's January 7 order, and not the 2011 order of Judge Massiah-Jackson, had the same effect as the entry of judgment in this case, Appellant's March 19, 2013 notice of appeal is untimely . . .
>
> After reviewing Appellant's motion, Judge Massiah–Jackson determined that the trial court "ha[d] no jurisdiction to vacate the 2011 settlement." Judge Massiah–Jackson's Opinion, 4/24/2013, at 5. The record indicates that Appellant raised with Judge Massiah–Jackson the issues which form the basis of her motion to vacate during the September 30, 2011 hearing regarding the validity of the underlying settlements. Judge Massiah–Jackson issued [an] order on October 19, 2011 denying Appellant relief and confirming the May 25, 2011 order listing the matter as settled. Pursuant to [Pa.R.A.P.] 903(a), Appellant should have filed an appeal of Judge Massiah–Jackson's order within 30 days. She failed to do so. Appellant cannot in 2013 attempt to revive claims that were previously litigated in 2011. Thus, we agree with Judge Massiah–Jackson: this matter is long over, and Appellant's attempt to effectuate an appeal of these issues at this late date is procedurally impermissible.

*Id.* at \*3; *see also id.* at \*4 ("this matter is long over, and Appellant's attempts to effectuate an appeal of these issues at this late date is procedurally impermissible").  On September 17, 2014, the Supreme Court denied Appellant's petition for allowance of appeal.

### Commonwealth Court Affirms Judgment in Pier 3 Action

Appellant did not raise fraud in her brief on appeal from the Pier 3 judgment to the Commonwealth Court.

On July 9, 2015, the Commonwealth Court affirmed the judgment in favor of Pier 3 and Wentworth.  *Pier 3 Condominium Assoc. v. Khalil*, 2015 WL 5458563 (Pa. Cmwlth. 2015) (unpublished memorandum) ("*Khalil II*").  The Court reasoned that the release in the water damage action barred Appellant's counterclaims against Pier 3:

> [Pier 3] was specifically identified in the first paragraph of the Release as the "Releasee's Insured."  Although the first paragraph of the Release is devoted to releasing Travelers, and the second paragraph is an indemnity provision, the third paragraph unambiguously "terminate[d] all controversy and/or claims for injuries or damages against ... Releasee's Insured ... including future developments thereof, in any way growing out of or connected with said incident [at the Unit.]"  In the fifth paragraph of the Release, Appellant "specifically agreed that this [Release] shall be a complete bar to all claims or suits against ... Releasee's Insured ... for injuries or damages of whatsoever nature resulting from or to said incident [at the Unit.]"
>
> Moreover, and significantly, the Release is not limited to the particular claims that Appellant asserted in the Insurance Action. Rather, the Release expressly identifies the underlying "incident" in [the water damage action] as the water infiltration that occurred on May 25, 2007, and broadly extinguishes all past, present, and future claims against [Pier 3], "of whatsoever nature," that arose or later arise[] out of or are in any way related

- 12 -

to this incident. In the present action, Appellant alleged that [Pier 3], through its arrangement with Wentworth, committed tortious acts and/or omissions and contractual breaches in connection with or in relation to the May 25, 2007 incident. Therefore, by its plain terms, the Release barred Appellant's counterclaims against [Pier 3] in the instant suit.

*Id.* at \*6.

The Commonwealth Court also affirmed the judgment in favor of Wentworth. Appellant, the Court stated, sued Pier 3 on the theory that it was vicariously liable for the negligence of its agent, Wentworth. Under common law, where the plaintiff releases a principal who is vicariously liable for its agent's negligence, the plaintiff cannot maintain an action against the agent for its independent negligence unless the release expressly preserves a right of action against the agent. *Id.* at \*6-7 (citing **Pallante v. Harcourt Brace Jovanovich, Inc.**, 629 A.2d 146 (Pa. Super. 1993), *overruled in part by* **Maloney v. Valley Medical Facilities, Inc.**, 984 A.2d 478 (Pa. 2009)). Appellant's release did not preserve any right to pursue claims against Wentworth. In addition, the Uniform Condominium Act expressly prohibits tort or contract lawsuits against agents of a condominium association such as Pier 3 and makes the association the sole responsible party subject to suit. *Id.* at \*7 (citing 68 Pa.C.S.A. § 3311(a)(2)(i)). Thus, "via **Pallante** or section 3311(a)(2) of the Act, or some combination of them both," Wentworth was not liable. *Id.* at \*8.

In a footnote, the Commonwealth Court added:

- 13 -

[T]he trial judge in the [water damage action] concluded that the [r]elease was valid, the Superior Court quashed the appeal [in **Khalil I**], and our Supreme Court denied allowance of appeal on September 17, 2014. Because the [water damage action] has now been litigated to a final judgment, the [r]elease is deemed valid, and Appellant cannot now use this Court, as appellate court, as the forum to re-contest the validity of the Release on the ground of mutual mistake.

*Id.* at *8 n. 15 (emphasis added).

Appellant did not appeal to the Supreme Court.

### **Appellant's Action Against Williams**

On May 10, 2013, Appellant filed a writ of summons against the Williams firm and two attorneys in the firm, Cole and Williams. On March 29, 2017, Appellant filed a complaint against Williams. Therein, Appellant alleged that before signing the Travelers release, she demanded "clear and specific wording" that signing would not affect her counterclaims in the then-pending Pier 3 *action*. Complaint, **Khalil v. Williams**, at ¶ 17. Even though her attorneys assured her that signing would not affect her counterclaims in the Pier 3 action, Appellant refused to sign the initial Travelers release presented to her. As a result, Cole drafted an alternative version containing an asterisk stating that the release would not prevent her from raising her counterclaims in the Pier 3 action. *Id.* at ¶ 18. Appellant claimed that this was the version of the release that she actually signed. *Id.* at ¶ 21. However, to her surprise, when Pier 3 and Wentworth later moved to dismiss her claims prior to trial in the Pier 3 action, they presented a signed release that did not include the asterisk. *Id.* at ¶¶ 31-32. The court dismissed Appellant's counterclaims

against Pier 3 and Wentworth, "[making it] evident to Appellant that Williams and Cole or counsel for [Pier 3 and Wentworth] had switched the release." *Id.* at ¶ 33.

Based on these allegations, Appellant raised five counts against Williams: (1) legal malpractice based in negligence; (2) legal malpractice based in breach of contract; (3) negligent misrepresentation; (4) breach of contract; and (5) fraudulent misrepresentation.

On July 11, 2019, the trial court granted Williams' motion for summary judgment.[4]  Appellant appealed to this Court, which affirmed in part and reversed in part.  *Khalil v. Williams*, 244 A.3d 830 (Pa. Super. 2021) ("*Khalil III*").  We held that Appellant's non-fraud claims were not actionable under *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346 (Pa. 1991), which held that a dissatisfied plaintiff could not sue her attorney following a settlement to which that plaintiff agreed absent proof that she was fraudulently induced to settle the original action. *Khalil III*, 244 A.3d at 840-41.

_____

[4] On March 22, 2019, while Williams' summary judgment motion was pending, Appellant filed another legal malpractice action against the same defendants. Williams filed preliminary objections seeking dismissal under the doctrine of lis pendens because the first legal malpractice action was still pending.  After the court granted summary judgment in the first malpractice action, it sustained the preliminary objections in the second action and dismissed that action with prejudice on the basis of res judicata.  This Court affirmed the dismissal of the second action in a published opinion, *Khalil v. Cole*, 240 A.3d 996 (Pa. Super. 2020).  Appellant did not appeal to the Supreme Court.

We turned to Appellant's fraud claim, which the trial court had dismissed on the basis of collateral estoppel. We observed that "collateral estoppel applies to issues that were *actually litigated* in the prior action, rather than claims which *could have* been raised, which are precluded by res judicata." *Id.* at 843 (emphasis in original). We ruled that a fraud claim was not raised or addressed in the water damage action. *Id.* ("it does not appear that Appellant ever raised her claim that the Travelers release was switched or altered [in the water damage action] . . . As a result, when the trial court in the water damage case entered its October [19], 2011 order finding that the settlements were valid, there was no allegation of fraud before it"). We further commented:

> While Appellant was concerned about the effect of the Travelers release after the settlement, there is no indication that she raised the identical claim that she is trying to raise in her fraudulent misrepresentation claim, and Appellees have not pointed us to anything in the record in the water damage case to the contrary. Moreover, **while Appellant could have perhaps raised her claim of fraud once she realized which release she signed**, we note that collateral estoppel applies to issues that were actually litigated in the prior action, rather than claims which could have been raised, which are precluded by *res judicata*.

*Id.* (emphasis added).

*Khalil III* also held, after lengthy analysis, that in the Pier 3 action, Appellant raised a fraud claim in her post-trial motions and in her Pa.R.A.P. 1925(b) statement on appeal. The trial court, however, did not address fraud in its Pa.R.A.P. 1925(a) opinion, and Appellant did not re-assert fraud in her Commonwealth Court brief. Consequently, we held that "[Appellant's claim]

- 16 -

of fraud against her former attorneys . . . was not actually litigated in the Pier 3 action and, therefore, is not estopped from being raised in this matter." *Id.* at 844. We remanded the fraud count for further proceedings in the trial court.

Appellant filed a petition for allowance of appeal in the Supreme Court, which granted the petition, and *Khalil III* remains pending in the Supreme Court.

### Present Case

On April 17, 2014, Appellant commenced the present action via writ of summons. Subsequently, Appellant and Travelers continued settlement negotiations that culminated in the execution of a term sheet. The term sheet was conditioned on a global settlement that included Pier 3. Pier 3, however, refused to participate in any settlement negotiations and was not a party to the term sheet.[5]

In 2016, Appellant filed a fourteen-count complaint and later an amended complaint. In the amended complaint, Appellant alleged that she

---

[5] On December 13, 2016, Travelers filed a motion to enforce the term sheet as a final and binding settlement agreement. The trial court granted Travelers' motion. Appellant appealed to this Court, which agreed with Appellant that the term sheet was not a final and binding settlement agreement. We held that the term sheet was not binding because it called for all parties to reach a global resolution, a condition that was not satisfied due to Pier 3's refusal to settle. *Khalil v. Travelers Indem. Co. of Am.*, 1290 EDA 2017 (Pa. Super. 2018) (unpublished memorandum). We remanded this case for further proceedings.

made it clear during trial in the water damage action that she opposed any settlement with Travelers that would preclude her counterclaims and joinder claims against Pier 3, Wentworth, and the Diegidios in the Pier 3 action. Amended Complaint at ¶ 49. As a result, she received a release that "contained the critical language [assuring] that the settlement would not jeopardize or affect her counterclaims and/or joinder claims in the Pier 3 suit." *Id.* at ¶ 50. She signed the release because of this language and because of Traveler's representations and assurances that the settlement in the water damage action would not affect her counterclaims and joinder claims in the Pier 3 action. *Id.* at ¶ 53. After she signed the release, however, Travelers "altered" the first page of the release to provide that the release "would be a complete bar to claims or suits against Releasee [Travelers] and Releasee's insured [Pier 3 and Wentworth]." *Id.* at ¶ 54. The "altered release" was different from the agreement she signed and from the numerous representations that Travelers made to her and her counsel. *Id.* at ¶ 55. Travelers "assured" Appellant and Williams, however, that the altered release would not affect Appellant's counterclaims or joinder claims in the Pier 3 action even though Travelers was the insurer for Pier 3 and Wentworth. *Id.* at ¶ 58. Based on these assurances, Williams understood that the release had no effect

on Appellant's claims in the Pier 3 action.[6] *Id.* at ¶ 64. Moreover, during the September 30, 2011 hearing before Judge Massiah-Jackson, Travelers assured the court that the release did not preclude Appellant's counterclaims or joinder claims in the Pier 3 action. *Id.* at ¶¶ 61-64.

On May 17, 2012, during a pretrial conference in the Pier 3 action, counsel for Pier 3 claimed that Appellant's counterclaims and joinder claims in the Pier 3 action were settled. *Id.* at ¶¶ 67-68. This "was a shock" to Appellant due to her impression, based on the release that she signed and the assurances of Travelers' counsel, that the release did not affect these claims. *Id.* at ¶ 68. Pier 3 moved for summary judgment based on the release, and the court dismissed Appellant's counterclaims and joinder claims prior to trial. *Id.* at ¶¶ 69-71, 77.

Appellant's amended complaint asserts claims of fraud (Counts I, II and III), negligent misrepresentation (Count IV), breach of fiduciary duty (Count V), breach of contract (Counts VI and VII), breach of the implied covenant of good faith and fair dealing (Count VIII and IX), violation of the Uniform Condominium Act (Count X), violation of the Unfair Trade Practices and Consumer Protection Law (Count XI), civil conspiracy (Count XII), abuse of process (Count XIII), and insurance bad faith under 42 Pa.C.S.A. § 8371

---

[6] This was considerably different from the position that Appellant takes in *Khalil III*, wherein she accuses Williams (not Travelers) of altering the release that she signed to remove language that would have permitted her to raise her counterclaims and joinder claims in the Pier 3 action.

(Count XIV). All of these claims (including the claims for breach of contract) rest on Appellant's theory that Appellees fraudulently induced her to settle and discontinue the water damage action.

During a deposition in the present case, William Schaefer, Travelers' Vice President, testified that "[t]he intended scope of [the] release was to release Travelers only," and "the intent of [the] release was to release Travelers and not Pier 3." N.T., 11/27/19 at 11, 12.

Appellees moved for summary judgment on the basis of res judicata. In four orders dated March 14, 2019 and docketed on March 25, 2019, the trial court entered summary judgment against Appellant. Collectively, these orders constituted a final decision in this case in favor of all Appellees. On April 23, 2019, Appellant timely appealed to this Court.[7] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

## Discussion

Appellant raises the following issues in this appeal:

1. Did the trial court err as a matter of law when it held that the claims and issues in this action were barred by res judicata and collateral estoppel where (1) there was no entry of a judgment on the merits in the first prior action; (2) the trial court's opinion in the second prior action expressly declined to address the issues in this case; (3) the claims and issues in this case were not (and could not have been) considered or decided in either prior action; and (4) the claims and issues in this action are not identical to the claims and issues in either prior action?

---

[7] The notice of appeal expressly provided that Appellant appealed from all four summary judgment orders.

2. Did the trial court err or abuse its discretion in holding that Appellant's fraud and misrepresentation claims were time-barred where (1) Appellant's cause of action did not accrue until August 14, 2012 when judgment was entered in the second action; or, in the alternative, (2) the issue of when Appellant knew or should have known of the existence of her claims raised questions of fact that should have been decided by a jury?

3. Did the trial court err as a matter of law when it failed to construe the facts in the light most favorable to Appellant as the non-moving party and granted summary judgment in favor of defendants on the grounds of release and failure to state a claim?

Appellant's Brief at 7-8.

In her first argument, Appellant urges us to determine that the trial court erred by finding her claims barred under the doctrine of res judicata. We conclude that the court's decision was correct.

"Res judicata, which is also known as claim preclusion, holds that a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies." *Rearick v. Elderton State Bank*, 97 A.3d 374, 380 (Pa. Super. 2014). The res judicata doctrine relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication." *In re Stevenson*, 40 A.3d 1212, 1222 (Pa. 2012). Res judicata "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate." *Id.*

For res judicata to apply, there must be a concurrence of four identities: (1) identity of issues; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the

parties suing or sued. Res judicata "prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication." ***Wilkes v. Phoenix Home Life Mut. Ins. Co.***, 902 A.2d 366, 399 (Pa. 2006). Thus, "[a] party must raise all matters related to an issue at first opportunity or be forever barred from raising them again." ***Winpenny v. Winpenny***, 643 A.2d 677, 679 (Pa. Super. 1994). It makes no difference if that party was *pro se*. ***Id.*** ("Even giving the highest consideration to the *pro se* party, there can be no doubt from the record that [the a]ppellant has had every opportunity for appropriate hearings on the various points of which she now complains").

It is important to distinguish between res judicata, the doctrine at the heart of the present case, and collateral estoppel, a doctrine that we do not have occasion to apply in this case. "The doctrine of collateral estoppel or issue preclusion prevents a question of law or an issue of fact that has once been litigated and fully adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit." ***Khalil III***, 244 A.3d at 841. Unlike res judicata, which bars later claims that either were raised or "could have been litigated in the prior proceeding but were not," collateral estoppel only "bars litigation of issues that were actually litigated in the prior action." ***Id.*** at 841-42.

We first address whether the trial court properly determined that res judicata bars Appellant's action against Travelers. Appellant seems to

suggest, without explicitly arguing, that res judicata does not apply because the parties in the present case are not identical to the parties in the water damage action. Next, she explicitly argues that her claims against Travelers in the present case for fraud are different from her claims against Travelers in the water damage action for damages to her condominium, and the settlement in the water damage action was not a final judgment on the merits. None of these issues has merit.

Appellant does not dispute that she and Travelers were parties in the water damage action. She appears to suggest, however, that the parties in the present case are not identical to the parties in the water damage action because some defendants in the present case, such as Pier 3 and Wentworth, were not parties in the water damage action. This fact does not help Appellant. We recently instructed that

> [t]he [doctrine of res judicata] should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose—a second trial on the same cause between the same parties. The thing which the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights. If this be the fact, then the matter ought not to be litigated again, nor should the parties, by a shuffling of plaintiffs on the record, or by change in the character of the relief sought, be permitted to nullify the rule.

***BuyFigure.com, Inc. v. Autotrader.com, Inc.***, 76 A.3d 554, 561 (Pa. Super. 2013) (citing ***Stevenson v. Silverman***, 208 A.2d 786, 788 (Pa. 1965)). Under this precept, the critical question is whether Appellant had an

opportunity to appear and assert her rights against Travelers in the water damage action. She clearly did, since Travelers was a defendant in that action. The addition of Pier 3 and Wentworth in the present action is a "minor difference in parties" that does not defeat res judicata.[8] ***BuyFigure.com***, 76 A.3d at 561.

Next, Appellant argues that res judicata does not apply because her causes of action in the present case, which all rest on fraud, are different from the water damage case, in which there were no fraud claims. The flaw in this argument is that Appellant **could have** raised fraud during the water damage action. According to Appellant's amended complaint in this case, at the time of settlement in the water damage action, she received a proposed release from Travelers containing text that the settlement with Travelers would not impair her counterclaims or joinder claims in the Pier 3 action. She allegedly signed this release. Subsequently, however, Travelers "altered" the first page of the release to provide that the release "would be a complete bar to claims or suits against Releasee [Travelers] and Releasee's insured [Pier 3 and Wentworth]." ***Id.*** at ¶ 54. The "altered release" was different from the agreement she signed and from the numerous representations that Travelers made to her and her counsel. ***Id.*** at ¶ 55. Travelers "assured" Appellant and

---

[8] Similarly, the fact that there are parties in the present action (e.g., Travelers) who were not parties in the Pier 3 action does not prevent the defendants in the Pier 3 action, Pier 3 and Wentworth, from prevailing in the present action on the basis of res judicata. ***BuyFigure.com***, 76 A.3d at 561.

Williams, however, that the altered release would not affect Appellant's counterclaims or joinder claims in the Pier 3 action even though Travelers was the insurer for Pier 3 and Wentworth. *Id.* at ¶ 58. Because of the "alteration" in the release, Appellant refused to accept settlement payments from Travelers or other defendants in the water damage action. As a result, the court convened a hearing on September 30, 2011 to determine whether the settlement was valid. The hearing transcript reveals that Appellant advised the court that two attorneys other than Williams reviewed the release and told her that it would compromise her counterclaims and joinder claims in the Pier 3 action. Furthermore, Appellant advised the court that during a pretrial conference in the Pier 3 action, opposing counsel contended that the Travelers release precluded Appellant's counterclaims and joinder claims in the Pier 3 action. Accepted as true, Appellant's averments in her amended complaint and her statements to the court indicate that she believed, at or before the time of the evidentiary hearing, that Travelers had fraudulently altered the release. She could have raised fraud during the water damage action, either before, during or after the hearing. Alternatively, she could have filed a prompt motion to vacate Judge Massiah-Jackson's October 19, 2011 order and a timely appeal if the motion remained undecided at the end of the appeal period. Appellant failed to take any of these steps, and thus res judicata bars her from raising it in the present case against Travelers. *Wilkes*, 902 A.2d

at 399 (res judicata not only precludes claims that were raised in prior action but also claims that could have been raised).

Our decision last year in **Khalil III**, which permitted Appellant to proceed with fraud claims against her former attorneys in the Williams firm, does not conflict with our decision today on res judicata. **Khalil III** only addressed whether collateral estoppel precluded Appellant's fraud claims, that is, an inquiry limited to whether fraud claims concerning the Travelers release were **actually** litigated in the water damage action. **Id.**, 244 A.3d at 843. **Khalil III** did not address the res judicata issue of whether fraud claims **could have** been litigated in the water damage action. However, *dicta* in **Khalil III—**"Appellant could have perhaps raised her claim of fraud" in the water damage action "once she realized which release she signed," **id.**—suggests that **Khalil III** might have found that res judicata applied had it actually decided this question.

Next, Appellant argues that the water damage action cannot serve as the basis for res judicata because there was no final judgment on the merits in that action. We disagree. We held in **Khalil I** that (1) Judge Massiah-Jackson's October 19, 2011 order constituted an order to settle, discontinue and end the water damage action on the basis of the release, and (2) this order had the same effect under the law as entry of final judgment. **Id.**, 2014 WL at 10937477, *2 ("[m]arking a case settled, discontinued and ended has the same effect as the entry of judgment") (citing **Kaiser**, 454 A.2d at 144).

- 26 -

*Khalil I* operates as res judicata against Appellant on the issue of whether the disposition in the water damage action is equivalent to a final judgment. Appellant cannot relitigate this issue in the present case.

Because none of Appellant's arguments has merit, we conclude that res judicata precludes Appellant's present action against Travelers. In making this determination, we recognize that some evidence in the record indicates that Travelers behaved less than honorably during this series of lawsuits. Judge Massiah-Jackson suggested in her opinion in the water damage action that Travelers assured her that the release would not compromise Appellant's claims against Travelers' insured, Pier 3, but then permitted Pier 3 to argue in the Pier 3 action that the release barred Appellant's claims. Furthermore, Travelers' vice president admitted during the present case that the intent of the release was to release Travelers and not Pier 3. Nevertheless, as discussed above, Appellant could have accused Travelers of fraud during the water damage action, but she failed to do so before the October 2011 settlement order, an order equivalent to a final judgment in that action.

We now address whether the trial court properly granted summary judgment to Pier 3 and Wentworth on the basis of res judicata. We conclude that it did.

Appellant does not dispute that (1) Pier 3, Wentworth, and Appellant were parties in the Pier 3 action, and (2) Pier 3 and Wentworth won a judgment in this action that was affirmed on appeal. Citing *Khalil III*,

however, Appellant argues that the judgment against her in the Pier 3 action is not res judicata herein because the issue of fraud was never decided in the Pier 3 action.

It is true that in **Khalil III**, we held that fraud was never decided in the Pier 3 action.[9] Nevertheless, Appellant could have raised fraud during the Pier 3 action. Our Supreme Court has written, "*In the absence of fraud or collusion*, a judgment or decree of a court of competent jurisdiction, valid and regular on its face, in force and unreversed cannot be impeached by the parties or privie[s] thereto, or by a stranger in a collateral proceeding in the same or another court." **Gordon v. Hartford Sterling Co.**, 38 A.2d 229, 233 (Pa. 1944) (emphasis added). Implicit in the italicized text is the principle that a party can collaterally attack a judgment in a prior case on the basis of fraud.

During the Pier 3 action, when Pier 3 and Wentworth moved for summary judgment in 2012 on the basis of the Travelers release, Appellant could have responded to the motion and/or moved to amend her pleadings in

_____

[9] **Id.**, 244 A.3d at 844 ("While Appellant raised the claim somewhat in her post-trial motion in the Pier 3 case, the trial court in that case declined to address any allegations about the circumstances in which the Travelers release was signed, finding that its determination was limited to whether the terms of the release barred Appellant's claims against Pier 3 and Wentworth. Likewise, though not raised on appeal, the Commonwealth Court found that any challenge to the validity of the Travelers release would be improper, since the trial court in the water damage action found it to be valid and this Court found that Appellant's attempt to re-litigate the release were untimely").

- 28 -

the Pier 3 action to assert that (1) she was assured during the water damage action that the release would not compromise her claims against Pier 3, and (2) these assurances were fraudulent, since Travelers (Pier 3's insurer) and Pier 3 intended all along for Pier 3 to invoke the release against Appellant's claims in the Pier 3 action. Appellant failed to raise fraud in her response to the summary judgment motion or move to amend her pleadings to allege fraud. Following the verdict in the Pier 3 action, Appellant did allege fraud in her post-trial motions, but she abandoned this claim in her brief in the Commonwealth Court. Under res judicata principles, since Appellant could have raised fraud on these occasions, her failure to take advantage of these opportunities precludes her from alleging fraud in the present case against Pier 3 and Wentworth.

Next, we consider whether the trial court properly entered summary judgment in favor of the attorney Appellees who represented Travelers in the water damage action (Thomas) and the attorney Appellees who represented Pier 3 and Wentworth in the Pier 3 action (Ferren). We hold that Thomas was in privity with Travelers in the water damage action, and that Ferren was in privity with Pier 3 and Wentworth in the Pier 3 action. Accordingly, res judicata precludes Appellant's present lawsuit against Thomas and Ferren.

In **Spisak v. Edelstein**, 768 A.2d 874 (Pa. Super. 2001), the plaintiff successfully sued his employer's insurance company for bad faith in handling his work-related claim. Then, in a subsequent lawsuit, the plaintiff sued the

law firm, Margolis Edelstein ("Margolis"), which defended the insurance company, asserting that his damage award was less than it would have been because Margolis made false statements and improperly redacted documents produced during discovery. In response, Margolis filed preliminary objections asserting that the misconduct allegations were raised and decided in the prior action, and therefore the plaintiff was barred by collateral estoppel from raising them again. The trial court sustained the preliminary objections, and this Court affirmed. We affirmed, reasoning that Margolis had the right to raise collateral estoppel because it was in privity with the defendant in the underlying action:

> That Margolis was not a party to the Penn National litigation does not prevent it from asserting collateral estoppel as a bar to [the plaintiff's] claim:
>
>> There is no requirement that there be an identity of parties in the two actions in order to invoke the bar. Collateral estoppel may be used as either a sword or a shield by a stranger to the prior action if the party against whom the doctrine is invoked was a party or in privity with a party to the prior action.

*Id.* at 877 (citing *Mellon Bank v. Rafsky*, 535 A.2d 1090, 1093 (Pa. Super. 1987)).

Thomas and Ferren are in the same position as Margolis was in *Spisak*—specifically, Appellant accuses Thomas and Ferren of committing misconduct in prior lawsuits while serving as counsel to the parties whom Appellant sued. Thus, as in *Spisak*, Thomas is in privity with Travelers, and Ferren is in privity

with Pier 3 and Wentworth. Since res judicata shields Travelers, Pier 3, and Wentworth from liability, it shields Thomas and Ferren as well.[10]

In summation, we conclude that that the trial court properly entered summary judgment as to all Appellees on the basis of res judicata. As a result, we need not address Appellant's second and third arguments, whether Appellees were entitled to summary judgment based on expiration of the statute of limitations or under the doctrine of judicial immunity.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2022

---

[10] We note that in cases similar to this, other courts have held that the attorney-client relationship establishes privity. *See*, *e.g.*, *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1169 (10th Cir.2000) (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n. 6 (7th Cir.1986)) ("The law firm defendants appear by virtue of their activities as representatives of Green and AT & T, also creating privity"); *Henry*, 808 F.2d at 1235 n. 6 ("Even though the Bank was the only actual party to the state court mortgage foreclosure proceedings, the other defendants, as directors, officers, employees, and attorneys of the Bank, are in privity with the Bank for purposes of res judicata."); *Verhagen v. Arroyo*, 552 So.2d 1162 (Fla. 3d DCA 1989) (under Florida law, for purposes of collateral estoppel, attorney is in privity with his client in previous suit when opposing party in that action brings a subsequent suit against attorney based on same facts).