J-A27001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PARKE BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE J. SPAEDER | : | |
| | : | |
| Appellant | : | No. 118 EDA 2025 |

Appeal from the Order Entered December 17, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2013-06961

BEFORE: BOWES, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 10, 2026**

George J. Spaeder ("Appellant") appeals from the order granting the motion for summary judgment filed by Parke Bank and awarding it damages in the amount of $10,430,209.25. We affirm the court's order insofar as it grants summary judgment, but we otherwise reverse and remand for a trial on damages.

The trial court summarized the circumstances surrounding this litigation thusly:

> On March 6, 2008, Parke Bank entered into a construction loan agreement with North Charlotte [Road Pottstown LP ("North Charlotte")] in the original principal amount of $8,000,000, as evidenced by a commercial mortgage note [executed by Appellant in his capacity as manager for North Charlotte]. On that same date, Appellant executed and delivered to Parke Bank a guaranty agreement (the "Guaranty"), wherein he agreed to act as guarantor for North Charlotte's obligations to Parke Bank in connection with the note. Appellant also executed a disclosure for confession of judgment. The loan was obtained to develop and

maintain a commercial property venture by Appellant. [Around this same time, Parke Bank additionally provided several separate loans to other entities closely-related to North Charlotte and owned by Appellant's then-business partner, Bruce Earle.]

In 2011[,] North Charlotte defaulted on its loan with Parke Bank, which Appellant concedes. Parke Bank confessed judgment against North Charlotte in a case . . . docketed in the Delaware County Court of Common Pleas at CV-2012-010301 [(the "North Charlotte Action")].

Trial Court Opinion, 3/17/25, at 2-3 (internal citations omitted and capitalization altered). Appellant was not a named party in the North Charlotte Action.

North Charlotte filed a petition to strike or open the confessed judgment. Therein, it asserted that there was a disputed question as to whether it defaulted on the loan, alleging that Parke Bank "misapplied loan proceeds, rental income, and funds specifically designated to pay down this loan." Motion for Summary Judgment, 9/23/24, at Exhibit 8, ¶ 1 (North Charlotte's Petition to Strike Off or Open Judgment). In that vein, North Charlotte accused Parke Bank of applying payments from North Charlotte to pay down loans made to other entities, including those owned by Mr. Earle, thereby creating "financial instability for borrowers and the guarantors" and failing to abide by the terms of the loan document. *See*, *e.g.*, *id*. at ¶¶ 17-21. The trial court entered an order on June 14, 2013, denying North Charlotte's petition. Additionally, as part of the litigation, the parties entered into a consent order. Among other things, it designated Parke Bank as mortgagee

in possession of the real property in dispute. ***See generally*** Motion for Summary Judgment, 9/23/24, at Exhibit 2 (Consent Order).

In July 2014, Parke Bank initiated the instant case by filing a complaint to confess judgment against Appellant, as guarantor of the loan. Judgment was entered by the prothonotary on the same date in the amount of $10,430,209.25. Appellant timely submitted a petition to open or strike the judgment, asserting that the complaint and its attachments did not allow the prothonotary to properly calculate damages. Furthermore, he claimed, like North Charlotte, that Parke Bank failed to abide by the terms of the loan agreement, which effectively constituted "material modifications of the loan." Appellant's Petition to Open or Strike, 8/30/2013, at ¶ 25. Appellant contended that this accordingly voided the Guaranty. After numerous responsive filings, motions to compel, and a hearing, the trial court entered an order opening the judgment on May 15, 2014. The order denied the request to strike.

From that point, the parties briefly engaged in discovery. Otherwise, this case remained nearly stagnant for approximately a decade. The record reflects that the parties, as well as other entities closely related to North Charlotte, became involved in litigation in various jurisdictions for matters relating to this loan and others distributed by Parke Bank. These included: (1) a federal action filed by both Appellant and North Charlotte against Parke Bank asserting claims pursuant to the Racketeer Influenced and Corrupt Organizations ("RICO") Act; (2) a subsequent state action initiated by

Appellant against Parke Bank via writ of summons, which was dismissed with prejudice for failure to file a complaint; and (3) a petition to fix fair market value filed by Parke Bank in the Montgomery County Court of Common Pleas (the "Montgomery County Matter"). Of note, in the Montgomery County Matter, the court established that the fair market value of the property secured by the instant loan was $4,500,000.00 and that "[t]he amount of judgment owed to [Parke Bank] that was not discharged by the sale of the property is $5,369,725.37." Motion for Summary Judgment, 9/23/24, at Exhibit 9 (Order Fixing Fair Market Value–Deficiency Judgment).

In 2024, the underlying case was administratively assigned to a new judge, who scheduled a conference to ascertain the status of litigation. Parke Bank subsequently filed a motion for summary judgment on September 23, 2024. Within, it asserted that there was no dispute that North Charlotte agreed to the loan, it defaulted, and Appellant agreed to be a guarantor. Parke Bank further opined that Appellant was barred from advancing the defenses arising from Parke Bank's purported misconduct pursuant to the doctrine of *res judicata*, as those issues "ha[d] been litigated time and again, each time resulting in judgment in favor of Parke Bank and against [Appellant] and North Charlotte." Motion for Summary Judgment, 9/23/24, at 3.

Appellant responded, arguing that a material question of fact existed that warranted resolution via trial:

> It is admitted that [Appellant] executed the [Guaranty]. However, due to Parke [Bank]'s unilateral changes of the underlying [loan] agreement[,] as well as changes agreed to between Parke [Bank]

- 4 -

and North Charlotte, the terms of the Guaranty are no longer enforceable. As an example, Parke [Bank] admits that it unilaterally diverted revenue from the payments made for the benefit of North Charlotte to obligations of third parties. . . . Said processing of payments violated the express language of the [loan agreement] and the [pertinent assignment agreements,] . . . voiding any obligations under the Guaranty originally executed.

Answer to Motion for Summary Judgment, 10/22/24, at ¶ 3 (some capitalization altered). In support, Appellant cited the transcript of a deposition taken as to one of Parke Bank's officers in 2014. Appellant further disputed that *res judicata* applied in this matter, maintaining that "this litigation involves the enforceability of the Guaranty[,] not a relitigation of the North Charlotte claims. [Parke Bank's] action seeks recovery under the Guaranty[,] which [Appellant] contest[s] the enforceability of the obligations therein." *Id*. at ¶ 39.

Following a hearing, the trial court granted Parke Bank's motion and entered judgment against Appellant in the amount of $10,430,209.25. This timely appeal followed. The trial court did not direct Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b), and none was filed. Nevertheless, the court authored a Rule 1925(a) opinion explaining its rationale for granting summary judgment to Parke Bank.

Appellant presents four claims on appeal, which we have reordered for ease of disposition:

1. Did the trial court misapply the doctrine of *res judicata* by finding preclusion based on prior proceedings in which Appellant was neither a party nor had his defenses adjudicated?

- 5 -

2.      Did the trial court violate the coordinate jurisdiction doctrine by granting summary judgment where a judge of the same court, applying the standard mirroring the standard for summary judgment, found issues of fact existed requiring a trial?

3.      Did the trial court err in granting summary judgment where material factual disputes exist regarding the enforceability of a commercial guaranty?

4.      Did the trial court err by disregarding evidence that Parke Bank materially altered the underlying construction loan agreement and related documents without consent of the guarantor, thereby discharging the Guaranty in finding that Parke Bank was entitled to judgment on the Guaranty as a matter of law?

Appellant's brief at 4 (some capitalization altered).

Appellant's issues all concern the trial court's decision to grant summary judgment in favor of Parke Bank. Thus, the standard of review governing all the claims is as follows:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Kozel v. Kozel*, 97 A.3d 767, 772 (Pa.Super. 2014) (citation omitted).

As will be discussed in more detail below, the trial court's decision was based, at least in part, on the application of *res judicata*. We have outlined the purpose and elements of that doctrine:

*Res judicata*, which is also known as claim preclusion, holds that a final judgment on the merits by a court of competent jurisdiction

- 6 -

will bar any future action on the same cause of action between the parties and their privies. The *res judicata* doctrine relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication. *Res judicata* precludes parties from contesting matters that they have had a full and fair opportunity to litigate.

For *res judicata* to apply, there must be a concurrence of four identities: (1) identity of issues; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Res judicata* prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication. Thus, a party must raise all matters related to an issue at first opportunity or be forever barred from raising them again.

***Khalil v. Travelers Indemnity Company of America***, 273 A.3d 1211, 1223-24 (Pa.Super. 2022) (cleaned up). We further note that "[t]he doctrine of *res judicata* subsumes the doctrine of issue preclusion, also known as collateral estoppel. Thus, *res judicata* in Pennsylvania encompasses issue preclusion and claim preclusion." ***Khalil v. Cole***, 240 A.3d 996, 1001 (Pa.Super. 2020) (citation omitted).

Under this principle, "[t]he parties are considered to meet the 'identical parties' requirement of *res judicata* if the party against whom the plea is asserted was a party **or in privity with a party** to the prior adjudication." ***Cole***, 240 A.3d at 1002 (cleaned up, emphasis added). The concept of "privity" in this context is fluid. In fact, we have noted that it "is a term which the courts have never been able to define satisfactorily." ***Ammon v. McCloskey***, 655 A.2d 549, 554 (Pa.Super. 1995). Nonetheless, we recognize that, broadly,

[i]t is defined by Black's Law Dictionary (5th ed. 1979) as "mutual or successive relationship to the same rights of property. In its broadest sense, 'privity' is defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right."

*Id*. In different contexts, we have explained the following:

Generally, there is no prevailing definition of "privity" which can be applied automatically to all cases. Privity for purposes of *res judicata* is not established by the mere fact that persons may be interested in the same question or in proving the same facts. [By way of example, t]he Restatement (Second) of Judgments applies principles of *res judicata* to different parties where one is vicariously responsible for the conduct of another, such as principal and agent or master and servant. Restatement (Second) of Judgments § 51. In such cases there is, in an important sense, a single claim. The same loss is involved, usually the same measure of damages, and the same or nearly identical issues of fact and law.

*Day v. Volkswagenwerk Aktiengesellschaft*, 464 A.2d 1313, 1317 (Pa.Super. 1983) (cleaned up).

Here, in its Rule 1925(a) opinion, the trial court offered a relatively scant rationale for its decision to grant summary judgment in favor of Parke Bank. It first concluded as follows:

In the case *sub judice*, the record clearly established that North Charlotte defaulted and failed to repay the loan to Parke Bank. The record also clearly established that Appellant is a guarantor of said loan. In his response to the motion for summary judgment, Appellant asserted that Parke Bank made unilateral changes to the loan agreement, which rendered his Guaranty void. Despite this assertion and the court's prior determination that the judgment in this case should be opened, this court concluded that Appellant failed to show any clear, direct, precise and believable evidence in support of this defense that would be sufficient to present the issue to a jury.

Trial Court Opinion, 3/17/25, at 4-5 (some capitalization altered). Alternatively, the court determined, without significant discussion, that Appellant was precluded pursuant to the doctrine of *res judicata* from reasserting its various allegations against Parke Bank in order to open the judgment. ***Id***. at 5 n.5.

Within its brief, Parke Bank expounds upon the *res judicata* argument. It contends that the alleged material facts relied upon by Appellant to open the judgment, such as that "Parke Bank mishandled and misappropriated funds, violated loan agreements, and disbursed funds on fraudulent checks," were raised and rejected in the North Charlotte Action. ***See*** Parke Bank's brief at 24. Parke Bank maintains that Appellant's averments in this case are identical to those resolved claims. ***Id***. at 24-25. Additionally, the bank argues that as a guarantor, Appellant's defenses are solely derivative of any harms purportedly suffered by North Charlotte, and thus he was in privity with North Charlotte in that matter. ***Id***. at 25-27; ***id***. at 36 (noting that Appellant "at all times was intimately involved with North Charlotte. As managing member of North Charlotte and guarantor of the loan, [Appellant was] in privity with North Charlotte and has had a full and fair opportunity to litigate any of his claims against Parke Bank when he filed the North Charlotte petition [to strike or open] in 2012 and again when he filed the RICO action in 2015." (some capitalization altered)).

In contrast, Appellant asserts that none of the requirements to establish *res judicata* has been met here. He specifically avers that "not one decision

cited by [Parke Bank] evidences that the identical issue between the parties, [Appellant]'s defense of the unenforceability of the Guaranty[,] was previously adjudicated." Appellant's brief at 18. In a similar vein, he argues that Parke Bank has not met its burden of demonstrating that prior courts "necessarily" ruled against his defenses in rendering their decisions. *Id*. For example, Appellant states that in the North Charlotte Action, the fact that North Charlotte's petition to open or strike "was denied, does not evidence that a determination of [Appellant]'s defense to liability under the Guaranty would have been 'necessary' for . . . determination of the petition." *Id*. (quotation marks omitted, some capitalization altered). Finally, he maintains that he was not an "identical party" to any in the North Charlotte Action, and therefore was not "fully represented" in that matter. *Id*. at 18-19.

Upon review of the certified record, the arguments of the parties, and the applicable law, we find no error with the court's decision to award summary judgment in favor of Parke Bank under the facts of this case. More particularly, we conclude that there is no "genuine issue of material fact" required to be resolved at a trial as to liability concerning Appellant's defenses, which are barred on *res judicata* grounds. **See Kozel**, 97 A.3d at 772.

Our finding rests primarily on the prior resolution of the North Charlotte Action. We find that there was identity as to the issues and cause of action. **See Khalil**, 273 A.3d at 1223. Both matters involved confession of judgment actions filed by Parke Bank arising from either the disputed loan agreement or, in this case, the Guaranty associated therewith. In the North Charlotte

- 10 -

Action, North Charlotte argued and fully litigated the claim that the confessed judgment should be opened based upon Parke Bank's failure to abide by the terms of the loan agreement, such as directing payments and rents to pay down unrelated loans. The court's rejection of these claims constituted a final judgment on the merits.

Appellant raises the same factual assertions now, merely differentiating them by contending that he challenges the enforceability of only the Guaranty, not the underlying loan. However, his position that the Guaranty is unenforceable derives exclusively from the same allegations, raised by North Charlotte over a decade before, that Parke Bank modified the loan agreement by redirecting payments to reduce Mr. Earle's other debts. Stated another way, although Appellant accurately highlights that this case involves a different governing document, this does not change the fact that the defenses asserted in both cases are identical and rely upon the same factual allegations of wrongdoing. As noted, in response to Parke Bank's motion for summary judgment, Appellant only cited one piece of testimonial evidence, being deposition testimony from a Parke Bank officer which Appellant purportedly entails an admission to redirecting of funds. *See* Answer to Motion for Summary Judgment, 10/22/24, at ¶ 3.

Furthermore, we find that there is an "identity of persons and parties to the action," particularly on the basis of privity between Appellant and North

Charlotte.[1]   *See Khalil*, 273 A.3d at 1223.   As a guarantor of the loan, Appellant's liability and exposure were intrinsically tied to North Charlotte's performance in repaying or failing to repay the debt.   *See*, *e.g.*, *Osprey Portfolio, LLC v. Izett*, 67 A.3d 749, 755-56 (Pa. 2013) (stating that "in essence, a guaranty is a document defining a guarantor's liability for another's debt and a creditor's concomitant right to recover from the guarantor if the debtor does not pay" and that an executed guaranty "denominates the parties' rights, duties, entitlements, and/or liabilities").

Although it arose in a different context, namely a discussion of vicarious liability, we highlighted in *Day* that "[i]n such cases there is, in an important sense, a single claim.  The same loss is involved, usually the same measure of damages, and the same or nearly identical issues of fact and law." *Day*, 464 A.2d at 1317.  The relationship between Appellant and North Charlotte was of a similar nature here.  Parke Bank's remedy against North Charlotte and Appellant is the same and arises from a single factual occurrence, North Charlotte's undisputed default of the loan.  As recounted above, Appellant's purported reason to open the confessed judgment as to liability rests upon the actions or inactions taken by Parke Bank to the loan.  Therefore, we discern that there is "such an identification of interest of one person with another as to represent the same legal right." *Ammon*, 655 A.2d at 554.

---

[1] Appellant does not contest the element of *res judicata* concerning the "identity of the quality or capacity of the parties suing or sued." *Khalil*, 273 A.3d at 1223.

Moreover, since the time the North Charlotte Action concluded and this case was initiated, Appellant filed a federal RICO action, wherein both he and North Charlotte raised claims premised upon the same alleged wrongdoing by Parke Bank. Appellant had the opportunity to litigate the factual underpinnings of the very defenses he now raises. Indeed, the RICO action resulted in a judgment on the merits as to North Charlotte's claims, which the court found were barred based upon *res judicata* arising from the resolution of the North Charlotte Action. Although the court did not make the same finding as to Appellant individually, this does not change the fact that Appellant either presented these disputes or had the full and fair opportunity to do so as the prosecuting party. ***See Cole***, 240 A.3d at 1002 (stating that *res judicata* "covers all matters which **could have been raised** or presented in the former action as well as those actually litigated" (emphasis in original)).

Since we determine that Appellant has presented no genuine issue of material fact warranting a trial as to liability, the court did not err in granting summary judgment. By necessity, we reject Appellant's second and related claim on appeal, that the trial court violated the coordinate jurisdiction rule[2] by granting summary judgment after previously deciding to open the confessed judgment. Appellant cites no binding legal authority dictating that

_____

[2] The "coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." ***Zane v. Friends Hosp.***, 836 A.2d 25, 29 (Pa.Super. 2003) (citation omitted).

once a court opens a confessed judgment, it is precluded as a matter of law from later entering summary judgment. Further, we note that the confessed judgment in this case was opened in 2014, but summary judgment was not entered until 2024. In the intervening time, not only did Appellant fail to adduce any new evidence, but there were multiple additional cases wherein Appellant either had the opportunity to adjudicate these same claims or refrained from taking advantage of that chance. We therefore affirm the court's order to the extent that it grants summary judgment in favor of Parke Bank as to Appellant's liability.

However, that does not end our inquiry. Appellant also asserts that he has raised a genuine factual question relating to the award of damages, something he has contested since his initial petition to open. Specifically, he contends:

> A further issue of fact, apparent from the record itself, relates to the amount of the judgment. The determination is clearly erroneous. Parke [Bank] sold the collateral property and obtained a deficiency judgment against North Charlotte in the amount of $5,369,725.37 [in 2015 as part of the Montgomery County Matter]. Despite the primary obligor, North Charlotte, being responsible for a judgment in that amount, the trial court held the guarantor, [Appellant], to a greater standard and entered a judgment in the amount of $10,430,209.35. The inconsistency between the awards clearly raised issues of fact to at least the amount which may be recoverable from [Appellant].

Appellant's brief at 17 (some capitalization altered).

We agree. In its Rule 1925(a) opinion, the trial court did not discuss the award of damages in any detail, and Parke Bank does not address this

- 14 -

claim in any significant way other than to reassert the basic tenets that North Charlotte indisputably defaulted on a loan. In short, we cannot discern why Appellant's contest to the amount of damages does not create a genuine issue of material fact requiring resolution via factual findings. *See*, *e.g.*, 42 Pa.C.S. § 8103(c)(5) (stating that after a determination by a court to fix the fair market value of a property, "the debtor shall be released and discharged of such liability to the judgment creditor to the extent of the fair market value of said property determined by the court"); 42 Pa.C.S. § 8103(g) (defining a "debtor" to include a "guarantor . . . and any other person liable directly or indirectly to a judgment creditor for the payment of a debt"). Therefore, we reverse the trial court's order concerning damages and remand for a trial limited to determining damages.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/10/2026